# UNITED STATES DISTRICT COURT
Issued by the
## SOUTHERN DISTRICT OF NEW YORK

In re:

Application of CHEVRON CORPORATION, et al.

**SUBPOENA IN A CIVIL CASE**
**for use in foreign proceedings:**
*Maria Aguinda y Otros v. Chevron Corporation* (Case No. 002-2003-P-CSJNL), pending in the Provincial Court of Justice of Sucumbíos in Lago Agrio, Ecuador (the "Lago Agrio Litigation"); and
*Chevron Corporation and Texaco Petroleum Company vs. Republic of Ecuador*, an international arbitration initiated by Chevron and Texaco in September 2009 under the UNCITRAL Rules pursuant to the provisions of the U.S.-Ecuador Bilateral Investment Treaty

**CASE NUMBER:** 10 MC 00002 (LAK)

TO:     Steven Robert Donziger
        245 W 104th St.
        New York, NY 10025-4249

☐  YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| Gibson, Dunn & Crutcher LLP 200 Park Avenue, 48th Floor New York, New York 10166 | August 25, 2010 9:00 am |

The Deposition will be recorded stenographically and by audio and video technology, and a real-time transcription service may be used.

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects)
***See Exhibit A attached hereto.***

| PLACE | DATE AND TIME |
|---|---|
| Gibson, Dunn & Crutcher LLP 200 Park Avenue, 48th Floor New York, New York 10166 | August 18, 2010 9:00 am |

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Kristen Hendricks* | 8/6/10 |
| Kristen Hendricks                                   Attorneys for Applicant | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Kristen Hendricks, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|

**SERVED**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|------|---------------------|

| | ADDRESS OF SERVER |
|--|-------------------|

Rule 45, Federal Rules of Civil Procedure, Parts C, D & E:

(c)      PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

      (1)      A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The Court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

      (2)(A)      A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

      (B)      Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

      (3)(A)      On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it:
      (i)      fails to allow reasonable time for compliance;
      (ii)      requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
      (iii)      requires disclosure of privileged or other protected matter and no exception or waiver applies, or
      (iv)      subjects a person to undue burden.
      (B)      If a subpoena:
      (i)      requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii)      requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
      (iii)      requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)      DUTIES IN RESPONDING TO SUBPOENA.
      (1)      A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
      (2)      When information subject to a subpoena is withheld on a claim that  it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(e)      CONTEMPT.  The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

DOCUMENTS TO BE PRODUCED

DEFINITIONS

In conjunction with, and in addition to, the Uniform Definitions in Discovery Requests set forth in Rule 26.3 of the Local Rules of the Southern District of New York, which are herein incorporated by reference, the following definitions and instructions apply to each of the discovery requests.

1.      The phrase "1782 ACTIONS" shall mean and refer to legal proceedings filed by Chevron pursuant to 28 U.S.C. § 1782 seeking discovery RELATING TO the LAGO AGRIO LITIGATION, including without limitation the instant action, *Petitioner Chevron v. Respondents Stratus Consulting, Inc., et al.*, Case No. 10-cv00047-JLK (D. Col); *In re Application of Chevron Corporation*, Misc. No. 1:10-MI-0076 (N.D. Ga); *In re Application of Chevron Corporation*, Misc. No.4:10-MC-134 (S.D. Tex.); *In re Application of Chevron Corporation, et al.*, Misc. No. M-19-111; *In re Application of Chevron Corporation for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 10-cv-2675 (SRC) (D. N.J.); *In re Application of Chevron Corporation*, No. 3:10-cv-01146-IEG-WMC (S.D.Cal.); *In re Application to Issue a Subpoena for the Taking of a Deposition and the Production of Documents*, No. 1:10-mc-00371-CKK (D.D.C.), and *Chevron v. Quarles*, 3:10-cv-00686 (MD Tenn.), and latter filed similar action.

2.      The term "3TM" shall mean and refer to 3TM Consulting, LLC and 3TM International, Inc., organized under the laws of the State of Texas, and includes 3TM's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity

acting, or purporting to act, on 3TM's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

12.   The phrase "AGUINDA LITIGATION" shall mean and refer to the case of *Maria Aguinda et al. v. Texaco Inc.*, No. 93cv7527 (S.D.N.Y.).

3.   The phrase "AMAZON WATCH" shall mean and refer to the organization entitled Amazon Watch as described on the website  http://www.amazonwatch.org/.

4.   "And" includes the word "or" and vice-versa.

5.   "Any" includes the word "all" and vice-versa.

6.   The phrase "AUTHORSHIP" shall mean and refer to the PERSON or PERSONS that directly or indirectly CONTRIBUTE to the existence of a DOCUMENT.

7.   The phrase "CABRERA" shall mean and refer to Court-Appointed Expert Richard Stalin Cabrera Vega and any PERSON assisting him in the LAGO AGRIO LITIGATION, including without limitation any individual identified in Annex V to the Technical Summary Report, By: Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, Expert Opinion, dated March 24, 2008.

8.   The phrase "CABRERA REPORTS" shall mean and refer to the Technical Summary Report, By: Engineer Richard Stalin Cabrera Vega, Expert For The Court Of Nueva Loja, Expert Opinion, dated March 24, 2008, and the November 2008 Responses To The Plaintiffs' Questions Concerning The Expert Report, by Engineer Richard Stalin Cabrera Vega and any parts, sections, or annexes of the CABRERA REPORTS.

9.   The phrase "CABRERA WORKPLAN" shall mean and refer to the June 25, 2007 filing by CABRERA entitled Work Plan for Expert Determination and any parts, sections, or annexes of the CABRERA WORKPLAN.

10.    The phrase "CALMBACHER" shall mean and refer to Dr. Charles Calmbacher, an individual found or residing in the state of Georgia.

11.    The phrase "CALMBACHER REPORTS" shall mean and refer to any and all judicial inspection reports filed by Plaintiffs in LAGO AGRIO LITIGATION under the name CALMBACHER.

12.    The phrase "CATOLICA" shall mean and refer to the laboratory of the Pontificia Universidad Católica Del Ecuador.

13.    The term "COMMUNICATION(S)" shall mean the transmittal of any information by any method and includes all meetings, discussions, telephone conversations, contracts, letters, e-mails, memoranda, correspondence, reports, statements, consultations, negotiations, estimates, purchase orders and any DOCUMENT relating thereto.

14.    The phrase "CONTRIBUTED TO" or "CONTRIBUTING TO" or "CONTRIBUTION TO" shall mean and refer to the act of adding or contributing WORK, whether through drafting, revision, comments, suggestions, guidance or assistance of any kind.

15.    The phrase "CORPLAB" shall mean and refer to the laboratory named Corporación de Laboratorios Ambientales del Ecuador CORPLABEC S.A. in Ecuador.

16.    The phrase "CRIMINAL CASES" shall mean and refer to all investigations or other proceedings RELATED TO actual or potential criminal accusations or charges RELATING TO the LAGO AGRIO LITIGATION, THE AGUINDA LITIGATION or the factual allegations therein. This definition includes without limitation all investigations or other proceedings RELATED TO the following documents:

   o   Comptroller General of Ecuador Genaro Peña Ugalde's Criminal Complaint filed with the Prosecutor General of Ecuador on October 29, 2003

3

- o Prosecutor General Mariana Yépez Andrade's Order Initiating the Preliminary Investigation for Environmental Crimes and Fraud issued on May 10, 2004

- o Prosecutor General of Ecuador Cecelia Armas's Motion to Dismiss the Fraud Charges filed in the Criminal Division of the Supreme Court of Ecuador on August 9, 2006

- o Public Prosecutor of Pichincha Marianita Vega Carrera's Motion to Dismiss the Environmental Crimes Charges filed in the Third Criminal Court of Napo on September 4, 2006

- o Order Requesting Comptroller General's Opinion on Prosecutor General Armas's Motion to Dismiss the Fraud Charges issued by the Supreme Court of Justice on October 27, 2006

- o Prosecutor General Jorge German's Motion to Dismiss Criminal Case filed in Supreme Court of Justice on March 1, 2007

- o Comptroller General Carlos Polít Faggioni's Motion Requesting that the Criminal Case Remain Open filed in the Supreme Court of Justice on May 18, 2007

- o Order Requiring Prosecutor General to Reissue Opinion issued by Supreme Court of Justice on June 11, 2007

- o Prosecutor General Jorge German's Motion to Dismiss Criminal Case filed in Supreme Court of Justice on June 14, 2007

- o District Prosecutor Washington Pesántez's Opinion Affirming the Motion to Dismiss the Environmental Crimes Charges (March 13, 2007)

- o Order Dismissing the Environmental Crimes Charges issued by the Third Criminal Court of Napo on March 16, 2007

- o Prosecutor General Washington Pesántez's Notice Reopening the Investigation for Falsification of Public Documents based on New Evidence issued on March 31, 2008

- o Prosecutor General Washington Pesántez's Notice Ordering the Initiation of the Prosecutorial Investigation issued on August 26, 2008

- o Judge Roberto Gómez Mera's Order Noticing the Initiation of the Prosecutorial Investigation issued on September 19, 2008 in the Supreme Court of Justice

- o Prosecutor General Alfredo Alvear Enríquez's Order Adding New Sites to Investigation issued on May 13, 2009

- o Environmental Engineer William Bedón's Expert Report Site Inspection filed with the Prosecutor General's Office on August 25, 2009

- o Prosecutor General Alfredo Alvear Enríquez's Accusation Opinion of Rodrigo Pérez and Ricardo Veiga issued on April 29, 2010

- o *Criminal Complaint Against Rodrigo Perez Pallares*, and others, Case No. 25-2004, Napo Court, Ecuador.

17.     As used herein, the terms "DOCUMENT" or "DOCUMENTS" shall mean all communications in a tangible form, however produced, reproduced, or stored on any electronic media from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form (including servers, hard drives, jump drives, CDs DVDs or any other storage device), and shall include, but shall not be limited to, the following: databases, all records, memoranda, reports, financial statements, handwritten and other notes, transcripts, papers, indices, letters, envelopes, invoices, bills, telegrams, cables, telex messages, tabulations, work papers, timesheets, statements, summaries, opinions, journals, desk calendars, appointment books, diaries, magazines, newspapers, booklets, circulars, bulletins,

notices, instructions, manuals, notes or summaries of telephone conversations or messages or

other communications of any type, video recording, photographs, tape or other recordings, punch

cards, discs, data cells, drums, printouts, and other data compilations from which information can

be obtained, electronically-stored information, phone records, correspondence, teletype

messages, electronic mail, instant messages, internal memoranda, agreements, diary entries,

minute books, financial records, accounting records, income tax returns, ledgers, journals, audits,

receipts, canceled checks, check stubs, drafts and other written, deeds, leases, mortgages,

assignments, insurance policies, or other instruments related to real or personal property printed

or typed matter, diagrams, plans, pictures, travel, entertainment, or expense records or reports or

any other tangible thing that constitutes matter. The term "DOCUMENT" and "DOCUMENTS"

shall also mean originals and exact copies or reproductions of all such written, printed, typed,

recorded or graphic material or matter upon which notations or markings in writing, print or

otherwise have been made which do not appear in the originals, and electronic files in native

format with all associated data intact, including without limitation, system and imbedded

metadata.

     18.    The phrase "ECUADORIAN OFFICIAL" shall mean and refer to any and all

current or former representatives or officials of the GOVERNMENT OF ECUADOR.

     19.    The term "EMA" shall mean and refer to the Ley de Gestion Ambiental,

Codification 2004-019, also known as the Environmental Management Act.

     20.    The term "E-TECH" shall mean and refer to E-Tech International and includes E-

TECH's partners, executives, directors, officers, contractors, employees, servants,

representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or

any other person or entity acting, or purporting to act, on E-TECH's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

21.    The phrase "EXPERT TESTIMONY" shall mean and refer to the giving of oral or written expert opinion to a court.

22.    The phrase "FARC" shall mean and refer to the entity known as the Fuerzas Armadas Revolucionarias de Colombia.

23.    As used herein, the term "FDA" shall mean and refer to the Frente de Defensa de la Amazonia, including FDA's members, partners, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on FDA's behalf, either directly or indirectly.

24.    The phrase "GOVERNMENT OF ECUADOR" shall mean and refer to governing political body in Ecuador, including without limitation its officials, politicians, partners, contractors, employees, servants, representatives, agents, agencies, offices insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on the GOVERNMENT OF ECUADOR'S behalf, either directly or indirectly.

25.    The phrase "HAVOC" shall mean and refer to the laboratory named HAVOC, currently located at El Comercio E7-79 y Ultimas Noticias, 2do. Piso • Quito – Ecuador.

26.    The phrase "HINTON COMMUNICATIONS" shall mean and refer to the entity named Hinton Communications, currently located at 1215 19th Street, NW, Washington, DC 20036, as described on the website www.hintoncommunications.com, including Karen Hinton and any partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or

any other person or entity acting, or purporting to act, on Hinton Communications' behalf, either directly or indirectly, whether as an employee or as an independent contractor.

27.   The term "IDENTIFY," when used in reference to:

a.       A person who is an individual, shall mean to state his or her name, current or last known employer, position, current or last known business or residence address (designating which), and business or residence telephone number (designating which);

b.       A person that is a firm, partnership, corporation, proprietorship, association, or other organization or entity shall mean to state the full name and present or last known address and telephone number, the legal form of such entity or organization, and the identity of its chief executive officers; and

c.       A DOCUMENT shall mean to state the date thereof and to identify the writer or originator of the DOCUMENT, any persons to whom it was sent, the subject matter dealt with in the DOCUMENT, the present location thereof, and the name(s) of the custodian(s) thereof.

28.   The phrase "LABSU" shall mean and refer to the laboratory named Laboratorio LABSU, Vicariato Apostólico de Aguarico in Ecuador.

29.   The phrase "LAGO AGRIO LITIGATION" shall mean and refer to the case of *Maria Aguinda y Otros v. Chevron Corporation*, currently pending in the Provincial Court of Justice of Sucumbíos in Ecuador.

30.   The phrase "LAGO AGRIO PLAINTIFFS" shall mean and refer to Alfredo Donaldo Payaguaje Payaguaje; Angel Justino Piaguaje Lucitante; Armando Wilfrido Piaguaje

Payaguaje; Beatriz Mercedes Grefa Tanguila; Benancio Freddy Chimbo Grefa; Bertha Antonia

Yumbo Tanguila; Carlos Grega Huatatoca; Catalina Antonia Aguinda Salazar; Celia Irene

Viveros Cusangua; Clide Ramiro Aguinda Aguinda; Daniel Carlos Lusitande Yaiguaje; Delfin

Leonidas Payaguaje Payaguaje; Elias Roberto Piyahuaje Payahuaje; Emilio Martin Lusitande

Yaiguaje; Esteban Lucitante Yaiguaje; Fermin Piaguaje Payaguaje; Francisco Alvarado Yumbo;

Francisco Matias Alvarado Yumbo; Francisco Victor Tanguila Grefa; Gloria Lucrecia Tanguila

Grefa; Guillermo Vicente Payaguaje Lusitante; Heleodoro Pataron Guaraca; Hugo Gerardo

Camacho Naranjo; Javier Piaguaje Payaguaje; Jose Gabriel Revelo Llore; Jose Miguel Ipiales

Chicaiza; Lidia Alexandra Aguinda Aguinda; Lorenzo Jose Alvarado Yumbo; Lourdes Beatriz

Chimbo Tanguila; Lucio Enrique Grefa Tanguila; Luis Agustin Payaguaje Piaguaje; Luis

Armando Chimbo Yumbo; Luisa Delia Tanguila Narvaez; Maria Victoria Aguinda Salazar;

Maria Clelia Reascos Revelo; Maria Hortencia Viveros Cusangua; Maria Magdalena Rodriguez

Barcenes; Miguel Mario Payaguaje Payaguaje; Narcisa Aida Tanguila Narvaez; Octavio Ismael

Cordova Huanca; Olga Gloria Grefa Cerda; Patricio Alberto Chimbo Yumbo; Patricio Wuilson

Aguinda Aguinda; Reinaldo Lusitande Yaiguaje; Rosa Teresa Chimbo Tanguila; Segundo Angel

Amanta Milan; Simon Lusitande Yaiguaje; and Teodoro Gonzalo Piaguaje Payaguaje.

     31.    The phrase "March 3, 2007 MEETING" shall mean and refer to the March 3,

2007 meeting in Quito attended by YOU, CABRERA, and other PLAINTIFF AFFILIATED

PEOPLE including, but not limited to Pablo Fajardo, Luis Yanza, Juan Pablo Saenz Mera, Anne

Maest, Richard Kamp and Charles Champ.

     32.    The phrase "PLAINTIFF AFFILIATED PERSON" or "PLAINTIFF

AFFILIATED PEOPLE" shall mean and refer to any PERSON directly or indirectly assisting

PLAINTIFFS in the LAGO AGRIO LITIGATION, including without limitation PLAINTIFFS'

LAWYERS, PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, FDA, SELVA VIVA,

STRATUS, 3TM, UBR, Hydrosphere, Laura Belanger, Charles Champ, David Russell,

CALMBACHER, Richard Clapp, E-TECH and the GOVERNMENT OF ECUADOR.

33.    The phrase "PLAINTIFFS' CONSULTANTS" shall mean and refer to any and all

people or organizations retained by any PLAINTIFF AFFILIATED PERSON for purposes

related to analysis of environmental harm, personal injury, remediation, compensation or other

disputed issues in the LAGO AGRIO LITIGATION.  The phrase includes STRATUS, E-TECH,

UBR, and 3TM.

34.    The phrase PLAINTIFFS' JUDICIAL INSPECTION EXPERTS shall mean and

refer to CALMBACHER, Jennifer Bilbao Garcia, Édison Camino Castro, Oscar Miguel Davila

Benitez, Orlando Manuel Felicita Nato, Xavier Alonso Grandes Zambonino, Jose Robalino

Hidalgo, Amaury Mauricio Suarez Rivera, Luis Alberto Villacreces Carvajal, Francisco Viteri

Santamaria, and Fabian Alberto Mora Orozco.

35.    The phrase "PLAINTIFFS' LAWYERS" shall mean and refer to any lawyer,

attorney or counselor, or PERSON acting on their behalf or assisting them, that has at any time

represented or advised PLAINTIFFS in the LAGO AGRIO LITIGATION or the 1782

ACTIONS, or having a financial interest of any kind in the LAGO AGRIO LITIGATION or the

1782 ACTIONS.

36.    The term "PERSON" shall mean any individual, corporation, organization,

association, partnership, enterprise, limited partnership, limited liability company, firm, joint

venture, trustee, governmental body, agency, governing board, department or division, or any

other entity.

37.    As used herein, the terms "PROVIDE" or "PROVIDED" shall mean to provide, to procure, to render, to furnish, to make available, to get, or to supply what is desired or needed either directly or indirectly.

38.    The phrase "RELATED TO" and "RELATING TO" shall mean in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

39.    The phrase "SELVA VIVA" shall mean and refer to the Ecuador organization Selva Viva, the presidency of which YOU accepted by letter of October 8, 2004, and any parent, subsidiary, division, or successor entity.

40.    The phrase "SELVA VIVA DATABASE" shall mean and refer to a database prepared for SELVA VIVA or the FDA for use in the LAGO AGRIO LITIGATION containing digitized environmental and health information, including without limitation analytical sampling results, responses from individuals surveyed, contaminant limits and standards, site information, and sampling coordinates, including without limitation a Microsoft Access database titled "Base de datos de Selva Viva del Caso Aguinda v. Chevron Texaco".

41.    The phrase SETTLEMENT AND RELEASE AGREEMENTS shall mean the following agreements and the performance of any legal obligation or scope of work contained therein:

   o    Memorandum of Understanding between The Government of Ecuador, Petroecuador and Texaco Petroleum Company, Dec. 14, 1994;

   o    Contract for Implementing of Environmental Work and Release From Obligations, Liability and Claims between the Republic, Petroecuador and TexPet, May 4, 1995;

o Final Act and Release, Sept. 30, 1998.

42.    The term "STRATUS" shall mean and refer to Stratus Consulting, Inc. and includes STRATUS's partners, executives, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on STRATUS's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

43.    The phrase "STRATUS COMMENTS" shall mean and refer to STRATUS' "Comments on the Report of Court-Appointed Expert Richard Cabrera Vega" dated December 1, 2008.

44.    The term "TRANSLATION" shall mean and refer to the translation of any DOCUMENT from either from Spanish to English or from English to Spanish.

45.    The term "UBR" shall mean and refer to Uhl, Baron, Rana & Associates, the environmental consulting company by that name with headquarters in Lambertville, New Jersey, and includes UBR's partners, executives, directors, officers, contractors, employees, servants, representatives, agents, insurance companies, attorneys, accountants, investigators, assigns, or any other person or entity acting, or purporting to act, on UBR's behalf, either directly or indirectly, whether as an employee or as an independent contractor.

46.    The phrase "WORK" shall mean and refer to any writing, analysis, study, report, research, investigation, examination, supervision, guidance, advising, opinion, ideas, calculation, inference, deduction, assumption, conclusion, technique, testing, sampling, or measuring, including any fieldwork, RELATING TO the LAGO AGRIO LITIGATION.

47.    The phrase "YOU" or "YOUR" shall mean and includes yourself and all persons acting in your interest or on your instructions or assisting you, including without limitation your

agents, servants, and representatives, including attorneys, accountants, investigators, advisors, environmental consultants, contractors, and medical consultants.

## INSTRUCTIONS

The following instructions shall govern the response and production of DOCUMENTS:

1.    All DOCUMENTS responsive to these Document Requests are to be Bates-stamped, logged, or otherwise individually identified prior to any review for privilege.

2.    In the event that any DOCUMENT called for by these Document Requests is withheld on the basis of a claim of privilege, that DOCUMENT is to be identified in a privilege log as follows:  Bates number or range (or equivalent document identifier), author(s), addressees(s), indicated or blind copy recipient(s), date, subject matter, number of pages, attachments or appendices, all persons to whom distributed, shown or explained, the present custodian, and the name and nature of the privilege asserted.  Any responsive DOCUMENT provided to any other person or entity prior to production for review for any privilege or protection, or for any other reason, shall be clearly Bates labeled prior to being provided to such person or entity.  A log of all documents so provided shall be maintained and included with any production.

3.    In the event that any DOCUMENT called for by these Document Requests has been destroyed, discarded, otherwise disposed of, or no longer exists, that DOCUMENT is to be identified as completely as possible, including, without limitation, the following information: author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of disposal, reason for disposal, PERSON authorizing the disposal, and the PERSON disposing of the DOCUMENT and identify its last known location and the reason it is no longer in existence.

4.     In the event that any DOCUMENT called for by these Document Requests and maintained electronically has been deleted from the system on which it was maintained, that DOCUMENT is to be identified as completely as possible, including, without limitation, the following information:  author(s), addressee(s), indicated or blind copy recipient(s), date, subject matter, date of deletion, reason for deletion, PERSON authorizing the deletion, and the PERSON deleting the DOCUMENT, and identify its last known location and the reason it is no longer in existence.  The system from which any such DOCUMENT was deleted shall be maintained in its present state, without reformatting, overwriting, or otherwise impairing the ability to recover any such DOCUMENT.

5.     In the event that any information is redacted from a DOCUMENT produced pursuant to these Document Requests, that information is to be identified and the basis upon which such information is redacted should be fully stated.

6.     In the event that multiple copies or versions of a DOCUMENT exist, produce all non-identical copies of the DOCUMENT, including any and all drafts of the DOCUMENT, and including any and all copies of the DOCUMENT with non-identical metadata.

7.     Please produce the requested documents as they are kept or maintained in the usual or ordinary course of business.  At the time and place of production of the DOCUMENTS requested herein, the DOCUMENTS requested are to be produced in the same order as they are maintained in the ordinary course of business.

8.     Pursuant to Fed. R. Civ. P. 34(b)(1)(C), electronically stored information is to be produced in their native electronic form, with all system and imbedded metadata intact. DOCUMENTS shall not be converted to any other format, including without limitation, .pdf or .TIFF format, that in any way limits, destroys, modifies, or restricts system or imbedded

metadata. If a DOCUMENT is maintained in both electronic and non-electronic form, the electronic form of the DOCUMENT is to be produced in its native electronic form, with all system and imbedded metadata intact.

9.      For each DOCUMENT produced, identify the specific Document Request category to which it is responsive.

10.     For each DOCUMENT produced, identify the office and location where that DOCUMENT was kept prior to this proceeding.

11.     As used herein, the singular form of a word shall be interpreted to include the plural form and the plural form shall be interpreted to include the singular whenever appropriate in order to bring within the scope of this request any DOCUMENTS which might otherwise be considered to be beyond its scope.

## DOCUMENTS TO BE PRODUCED

1.      All DOCUMENTS PROVIDED by YOU or any PLAINTIFF AFFILIATED PERSON to CABRERA or otherwise incorporated, in whole or in part, into the CABRERA REPORTS.

2.      All COMMUNICATIONS between YOU and any PLAINTIFF AFFILIATED PERSON RELATING TO DOCUMENTS PROVIDED by YOU or any PLAINTIFF AFFILIATED PERSON to CABRERA or otherwise incorporated, in whole or in part, into the CABRERA REPORTS.

3.      All COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and CABRERA, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

4.     All COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON RELATING TO CABRERA, the CABRERA WORKPLAN, or the CABRERA REPORTS, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

5.     All COMMUNICATIONS that occurred outside the presence of any attorney representing Chevron between YOU or any PLAINTIFF AFFILIATED PERSON and any judge or judicial officer in the LAGO AGRIO LITIGATION or in any court proceeding RELATING TO the LAGO AGRIO LITIGATION (including but not limited to any court proceeding relating to requests by Chevron for the inspection of HAVOC), and any DOCUMENTS RELATING TO such COMMUNICATIONS.

6.     All DOCUMENTS RELATING TO the CRIMINAL CASES.

7.     All DOCUMENTS RELATING TO HAVOC or any WORK by HAVOC, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and HAVOC, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

8.     All DOCUMENTS RELATING TO LABSU or any WORK by LABSU, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and LABSU, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

9.     All DOCUMENTS RELATING TO CORPLAB or any WORK by CORPLAB, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and CORPLAB, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

10.     All DOCUMENTS RELATING TO CATOLICA or any WORK by CATOLICA, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and CATOLICA, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

11.     All DOCUMENTS RELATING TO STRATUS, the STRATUS COMMENTS, or any WORK by STRATUS, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and STRATUS, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

12.     All DOCUMENTS RELATING TO E-TECH or any WORK by E-TECH, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and E-TECH, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

13.     All DOCUMENTS RELATING TO 3TM or any WORK by 3TM, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and 3TM, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

14.     All DOCUMENTS RELATING TO UBR or any WORK by UBR, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and UBR, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

15.     All DOCUMENTS RELATING TO SELVA VIVA or any WORK by SELVA VIVA, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and SELVA VIVA, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

16.     All DOCUMENTS RELATING TO CALMBACHER or any WORK by CALMBACHER, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and CALMBACHER, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

17.     All DOCUMENTS RELATING TO Charles Champ or any WORK by Charles Champ, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED

PERSON and Charles Champ, and any DOCUMENTS RELATING TO such
COMMUNICATIONS.

 18. All DOCUMENTS RELATING TO Laura Belanger or any WORK by Laura
Belanger, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED
PERSON and Laura Belanger, and any DOCUMENTS RELATING TO such
COMMUNICATIONS.

 19. All DOCUMENTS RELATING TO Richard Clapp or any WORK by Richard
Clapp, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED
PERSON and Richard Clapp, and any DOCUMENTS RELATING TO such
COMMUNICATIONS.

 20. All DOCUMENTS RELATING TO AMAZON WATCH or any WORK by
AMAZON WATCH, including COMMUNICATIONS between YOU or any PLAINTIFF
AFFILIATED PERSON and AMAZON WATCH, and any DOCUMENTS RELATING TO
such COMMUNICATIONS.

 21. All DOCUMENTS RELATING TO HINTON or any WORK by HINTON,
including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON
and HINTON, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

 22. All DOCUMENTS RELATING TO David Russell or any WORK by David
Russell, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED
PERSON and David Russell, and any DOCUMENTS RELATING TO such
COMMUNICATIONS.

 23. All DOCUMENTS RELATING TO Carlos Martin Beristain or any WORK by
Carlos Martin Beristain, including COMMUNICATIONS between YOU or any PLAINTIFF

AFFILIATED PERSON and Carlos Martin Beristain, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

24.    All DOCUMENTS RELATING TO Miguel San Sebastian or any WORK by Miguel San Sebastian, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and San Sebastian, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

25.    All DOCUMENTS RELATING TO FDA or any WORK by FDA, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and FDA, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

26.    All DOCUMENTS RELATING TO Edison Camino Castro or any WORK by Edison Camino Castro, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Edison Camino Castro, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

27.    All DOCUMENTS RELATING TO FARC, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and FARC, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

28.    All DOCUMENTS RELATING TO Acción Ecólogica  or any WORK by Acción Ecólogica, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Acción Ecólogica, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

29.    All DOCUMENTS RELATING TO Oilwatch or any WORK by Oilwatch, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Oilwatch, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

30.    All DOCUMENTS RELATING TO Rainforest Action Network or any WORK by Rainforest Action Network, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Rainforest Action Network, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

31.    All DOCUMENTS RELATING TO Luis Miguel García Aragón or any WORK by Luis Miguel García Aragón, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Luis Miguel García Aragón, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

32.    All DOCUMENTS RELATING TO Carlos Patricio García Ortega or any WORK by Carlos Patricio García Ortego, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Carlos Patricio García Ortego, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

33.    All DOCUMENTS RELATING TO Juan Pablo Novoa Velasco or any WORK by Juan Pablo Novoa Velasco, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Juan Pablo Novoa Velasco, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

34.    All DOCUMENTS RELATING TO Aulo Gelio Servio Tulio Ávila Cartagena or any WORK by Aulo Gelio Servio Tulio Ávila Cartagena, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Aulo Gelio Servio Tulio Ávila Cartagena, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

35.    All DOCUMENTS RELATING TO Rubén Dario Miranda or any WORK by Rubén Dario Miranda, including COMMUNICATIONS between YOU or any PLAINTIFF

AFFILIATED PERSON and Rubén Dario Miranda, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

36.     All DOCUMENTS RELATING TO Judge Juan Evangelista Núñez Sanabria, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Judge Juan Evangelista Núñez Sanabria, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

37.     All DOCUMENTS RELATING TO Grant Fine or any WORK by Grant Fine, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Grant Fine, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

38.     All DOCUMENTS RELATING TO Santiago Escobar or any WORK by Santiago Escobar, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Santiago Escobar, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

39.     All DOCUMENTS RELATING TO Alianza PAIS, including COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and Alianza PAIS, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

40.     All COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and any PERSON about reviewing and providing comments on or support for the CABRERA REPORT.

41.     All DOCUMENTS RELATING TO PLAINTIFFS' JUDICIAL INSPECTION EXPERTS and any WORK by PLAINTIFFS' JUDICIAL INSPECTION EXPERTS, including all exhibits, annexes, attachments, and full or partial drafts, whether or not reviewed or relied upon by said experts, including all COMMUNICATIONS between YOU or any PLAINTIFF

AFFILIATED PERSON and any PLAINTIFFS' JUDICIAL INSPECTION EXPERT, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

42.    All DOCUMENTS RELATING TO the collection, handling, and analysis of any soil, water, or other sample collected by, for, or under the supervision of, or provided to PLAINTIFFS' JUDICIAL INSPECTION EXPERTS or any soil, water, or other sample RELATED TO WORK by PLAINTIFFS' JUDICIAL INSPECTION EXPERTS.

43.    All versions or drafts of the CABRERA WORKPLAN or CABRERA REPORTS, and all versions or drafts of any part of the CABRERA WORKPLAN or CABRERA REPORTS.

44.    All COMMUNICATIONS between YOU and any PLAINTIFF AFFILIATED PERSON RELATING TO any version or draft of the CABRERA WORKPLAN or CABRERA REPORTS, or any version or draft of any part of the CABRERA WORKPLAN or CABRERA REPORTS.

45.    All DOCUMENTS RELATING TO any WORK by any PLAINTIFF AFFILIATED PERSON appearing in whole or in part in the CABRERA WORKPLAN or CABRERA REPORTS.

46.    All COMMUNICATIONS between YOU and any PLAINTIFF AFFILIATED PERSON RELATING TO any WORK by any PLAINTIFF AFFILIATED PERSON appearing in whole or in part in the CABRERA WORKPLAN or CABRERA REPORTS.

47.    All DOCUMENTS indicating or otherwise evidencing that YOU have been appointed as counsel in the LAGO AGRIO LITIGATION.

48.    All DOCUMENTS indicating or otherwise evidencing that YOU have been retained to provide legal services in relation to the LAGO AGRIO LITIGATION.

49.    All DOCUMENTS RELATING TO any payment that YOU or any PLAINTIFF AFFILIATED PERSON is to receive as a result of any judgment or finding of liability in the LAGO AGRIO LITIGATION.

50.    All DOCUMENTS RELATING TO any payment that any judge, judicial officer, or ECUADORIAN OFFICIAL has received for, or is to receive as a result of, any ruling, order, judgment, decision, or finding in the LAGO AGRIO LITIGATION.

51.    All DOCUMENTS RELATING TO any past, present, or future financial transactions between YOU or any PLAINTIFF AFFILIATED PERSON and CABRERA, or any agreement regarding past, present, or future financial transactions between YOU or any PLAINTIFF AFFILIATED PERSON and CABRERA.

52.    All COMMUNICATIONS between YOU and ANY PLAINTIFF AFFILIATED PERSON RELATED TO payment for WORK provided directly or indirectly to CABRERA or that appears in whole or in part in the CABRERA REPORTS, and any DOCUMENTS, including but not limited to invoices, receipts, billing statements, and credit agreements, RELATING TO such COMMUNICATIONS..

53.    All DOCUMENTS RELATED TO contracts, agreements, or letters of understanding between or among YOU or any PLAINTIFF AFFILIATED PERSON and CABRERA.

54.    All DOCUMENTS RELATING TO the planning, preparation, drafting, and filing of the CABRERA WORKPLAN or the CABRERA REPORTS.

55.    All DOCUMENTS RELATING TO the appointment of CABRERA as a judicial inspection expert or the global damages expert in the LAGO AGRIO LITIGATION.

56.     All COMMUNICATIONS between YOU and any PLAINTIFF AFFILIATED
PERSON RELATING TO the appointment of CABRERA as a judicial inspection expert or the
global damages expert in the LAGO AGRIO LITIGATION.

57.     All DOCUMENTS RELATING TO the March 3, 2007 MEETING.

58.     All COMMUNICATIONS between YOU and any PLAINTIFF AFFILIATED
PERSON RELATING TO the March 3, 2007 MEETING, and any DOCUMENTS RELATING
TO such COMMUNICATIONS.

59.     All DOCUMENTS RELATING TO the AUTHORSHIP of the CABRERA
WORKPLAN or CABRERA REPORTS or any effort to conceal or delay the discovery of the
AUTHORSHIP of the CABRERA WORKPLAN or CABRERA REPORTS.

60.     All COMMUNICATIONS between YOU and any lawyer or attorney that
represented or is representing any party in any of the 1782 ACTIONS RELATING TO the
AUTHORSHIP of the CABRERA REPORTS, contact between any PLAINTIFF AFFILIATED
PERSON and CABRERA, DOCUMENTS provided to CABRERA, or efforts to prevent
discovery, and any DOCUMENTS RELATING TO such COMMUNICATIONS.

61.     All COMMUNICATIONS between YOU or ANY PLAINTIFF AFFILIATED
PERSON and the GOVERNMENT OF ECUADOR or any ECUADORIAN OFFICIAL
RELATING TO CABRERA, the CABRERA WORKPLAN, the CABRERA REPORTS, the
LAGO AGRIO LITIGATION, the EMA, the CRIMINAL CASES, and any DOCUMENTS
RELATING TO such COMMUNICATIONS.

62.     All DOCUMENTS RELATED TO the CALMBACHER REPORTS, including
without limitation all exhibits, annexes, attachments, full or partial drafts, whether or not

reviewed by CALMBACHER, and all COMMUNICATIONS between YOU and ANY PLAINTIFF AFFILIATED PERSON RELATED TO the CALMBACHER REPORTS.

63.   All DOCUMENTS RELATED TO the TRANSLATION of the CABRERA REPORTS, including but not limited to invoices, receipts, and billing statements.

64.   All DOCUMENTS RELATED TO the TRANSLATION of the CALMBACHER REPORTS, including but not limited to invoices, receipts, and billing statements.

65.   All DOCUMENTS RELATING TO the TRANSLATION (from English to Spanish or Spanish to English) of any DOCUMENT responsive to this subpoena.

66.   All DOCUMENTS that directly or indirectly IDENTIFY any PERSON who authorized, supervised, conducted, or participated in the translation (from English to Spanish or Spanish to English) of any DOCUMENT responsive to this subpoena.

67.   All DOCUMENTS RELATING TO websites, File Transfer Protocol sites, or similar sites or protocols used for the viewing, access, transfer, distribution, uploading, or downloading of DOCUMENTS RELATING TO the LAGO AGRIO LITIGATION, all DOCUMENTS that IDENTIFY any PERSON that viewed, accessed, transferred, distributed, uploaded, or downloaded any DOCUMENTS from any such sites, and all DOCUMENTS that IDENTIFY any DOCUMENT that was viewed, accessed, transferred, distributed, uploaded, or downloaded from any such sites.

68.   All DOCUMENTS RELATED TO any COMMUNICATIONS between YOU or any PLAINTIFF AFFILIATED PERSON and any PERSON associated with pension funds, shareholder groups, investment analysts or institutional investors regarding Chevron or the LAGO AGRIO LITIGATION.