UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
In re Application of

CHEVRON CORPORATION, et al.,                                          10 MC 00002 (LAK)

This Document Applies to: ALL CASES
------------------------------------------------------------------- x

## MEMORANDUM AND ORDER

L̲ewis̲ A. K̲aplan̲, *District Judge.*

        Chevron Corporation ("Chevron") is the target of litigation brought in Ecuador by the Lago Agrio plaintiffs in which the latter seek to recover $113 billion for alleged environmental pollution by Texaco, Inc. ("Texaco").[1]  Chevron, Rodrigo Perez Pallares, and Richard Reis Veiga, two Chevron attorneys who now face criminal prosecution in Ecuador (the "Individual Petitioners"), applied under 28 U.S.C. § 1782 to obtain "outtakes" from Joseph Berlinger's documentary *Crude*. This Court overruled the objections to the application and ordered production of the outtakes.[2] Although appeals remain pending before the Second Circuit, the Court of Appeals has ordered Berlinger's compliance with this Court's order to the extent of producing certain categories of outtakes, categories that aggregated more than 85 percent of the total footage.[3]  This Court also granted Chevron's motion seeking additional discovery from Berlinger.

        Based on the outtakes, Chevron and the Individual Petitioners obtained two additional

---

[1] Chevron acquired Texaco after Texaco discontinued operations in Ecuador and settled environmental claims with its government.

[2] *In re Application of Chevron Corp.*, 709 F. Supp.2d 283 (S.D.N.Y. 2010) (hereinafter *Chevron I*).

[3] *See Chevron Corp. v. Berlinger,* Nos. 10-1919-cv, 10-1966-cv (2d Cir. filed July 15, 2010).

2

subpoenas, under 28 U.S.C. § 1782.  The new subpoenas seek discovery from Steven R. Donziger, who serves as an attorney-advisor to the Lago Agrio plaintiffs, regarding Donziger's communications and interactions with a supposedly neutral, independent Ecuadorian court-appointed expert, who has rendered a so-called "global assessment" of the case, the Lago Agrio plaintiffs' experts, Ecuadorian courts, the Ecuadorian government, and others affiliated with the plaintiffs.  The matter now is before the Court on motions by Donziger and the Lago Agrio plaintiffs to quash or modify the subpoenas.

Donziger and the Lago Agrio plaintiffs advance several arguments in support of quashing the subpoenas, most notably that (1) discovery from opposing counsel is disfavored, (2) the subpoenas are overbroad and unduly burdensome, (3) the information sought is privileged, and (4) the statutory and discretionary factors pertinent to Section 1782 applications are not satisfied. All will be dealt with in detail in a full opinion that the Court will file as promptly as possible.  In view of the facts that (1) the Individual Petitioners are facing a preliminary hearing in the criminal proceeding in Ecuador on November 10, 2010 and (2) the Lago Agrio plaintiffs are seeking to move the Ecuadorian civil litigation to judgment as quickly as possible,[4] petitioners have an urgent need for any discovery to which they are entitled here.  The Court therefore now rules in this summary form on the motions to quash with the understanding that more extensive findings and conclusions will follow as promptly as the Court's other responsibilities permit.

The Court has had the benefit of extensive evidentiary submissions, legal briefs, and oral argument.  It has had an opportunity to review the *Crude* outtakes, which are extraordinarily

---

[4] Donziger and the Lago Agrio plaintiffs rejected this Court's suggestion that proceedings in Ecuador be stayed pending a more extended determination of these motions.  Tr., Sept. 23, 2010, at 34:18-35:9.

revealing. On the basis of those materials as well as the extensive evidentiary submissions, briefs, and argument, the Court makes the following findings and conclusions.

<u>First</u>. The Section 1782 statutory requirements are satisfied, and the discretionary factors weigh in favor of discovery. The reasons they do so are at least as strong as those which led to the same conclusion in *Chevron I*, where this Court granted the applications for Section 1782 subpoenas for the *Crude* outtakes. Moreover, the Individual Petitioners seek documents and testimony from Donziger that are highly relevant to their pending Ecuadorian criminal proceeding while the relevance of the evidence sought by Chevron is even clearer than was the case with the outtakes.

The government of Ecuador is prosecuting the Individual Petitioners for alleged fraud in connection the Settlement and Final Release agreements among Texaco, the Government of Ecuador, and Petroecuador, Ecuador's state-owned oil company. These same charges were dropped several years ago after Ecuadorian prosecutors concluded that there was no basis for criminal liability.[5] The outtakes, however, depict Donziger, along with others acting for the Lago Agrio plaintiffs, describing their campaign for a renewed criminal investigation of the same allegations[6] for the purposes of (1) undermining and defeating the agreements to bolster their claim that Chevron is liable notwithstanding the prior settlement and (2) exerting pressure on Chevron by prosecuting

---

[5] Dans Decl. Ex. 11, at 10.

[6] *See e.g., id.* Ex. 2, CRS-170-00-03 (Donziger states that the plaintiffs have been working with the Prosecutor General's office because there is "no finality" in Ecuador); CRS-198-00-04 (Donziger and others plan a press conference to pressure the Prosecutor General to bring criminal charges); Hendricks Decl. II Ex. A, CRS-053-02-02 (Donziger and others brainstorm criminal allegations to use to inspect the offices of Chevron personnel); CRS-204-01-02 (Donziger suggests making posters showing "Texaco's four accomplices"); CRS-268-00-01 ("[P]erhaps it is time to ask for the head of Perez Pallares - given what the President said.").

its personnel. The Prosecutor General changed course and reopened the criminal investigation in light of new evidence[7] within days of the completion of the ostensibly neutral and impartial "global assessment" for the civil litigation.

This "global assessment" is the central focus of the discovery that the Individual Petitioners and Chevron seek. The Lago Agrio court appointed an ostensibly independent expert to submit a neutral report.[8] The outtakes, however, contain substantial evidence that Donziger and others (1) were involved in *ex parte* contacts with the court to obtain appointment of the expert,[9] (2) met secretly with the supposedly neutral and impartial expert prior to his appointment[10] and outlined a detailed work plan for the plaintiffs' own consultants,[11] and (3) wrote some or all of the expert's

---

[7] *See* Dans Decl. Ex. 15.

[8] Dkt. 15-2, at 4.

[9] *See, e.g.,* Hendricks Decl. II Ex. A, CRS-158-02-06 (Fajardo mentions three separate meetings with an Ecuadorian judge regarding the global assessment. Fajardo has an idea of which expert will be appointed); CRS-210-02-01 (a representative of the Lago Agrio plaintiffs refer to a meeting with the judge concerning the global expert report); CRS-261-11-01 (Lago Agrio court "never would have done [the expert's appointment] had [the plaintiffs] not really pushed him.").

[10] *See, e.g.,id.* CRS-187-01-02-01 (court expert Cabrera present at the plaintiffs' March 3 meeting); CRS-187-01-02-02 (Cabrera's introduction at the March 3rd meeting); CRS-187-01-02-10 ("Today's goal is to define the overall structure of this comprehensive expert examination."); CRS-189-00-01 (Cabrera participates in background conversation at the March 3rd meeting); CRS-189-00-03 (additional footage of the March 3 meeting); CRS-189-01-01(Cabrera is pictured in the background as the importance of a particular piece of evidence is discussed); ("[T]he work isn't going to be the expert's."); CRS-196-00-01 (one of the plaintiffs' expert expressed surprise that there was an advance meeting with the expert in which "everything" was laid out).

[11] *See, e.g.,id.* CRS-189-00-02 (Donziger states that the work definition includes not only evidence and remediation costs but also the expert's opinion. Donziger tells Cabrera that he needs to be comfortable with the work plan.); CRS-191-00-03 (Fajardo makes a presentation regarding coordination with the expert and the Ecuadorian court).

5

final report that was submitted to the Lago Agrio court and the Prosecutor General's Office,[12] supposedly as the neutral and independent product of the expert.

In these circumstances, the outtakes and other evidence demonstrate at least a significant need for the discovery sought by the Individual Petitioners and Chevron – discovery concerning, *inter alia*, the role of the Lago Agrio plaintiffs in selecting and procuring the appointment of the expert, in writing his report, and in procuring the reopening of criminal charges against the Individual Petitioners.  The likely relevance of the discovery sought is high.

Second.  It is common ground that depositions of adversary counsel in civil litigation are disfavored, albeit not prohibited in all circumstances.  That generalization, however, does not decide these motions.

As an initial matter, that principle has no bearing with respect to the Individual Petitioners because the Individual Petitioners seek Donziger's testimony and documents in their attempt to fend off or defeat a criminal prosecution brought or threatened against them by the Republic of Ecuador.  While Donziger appears to have had quite a bit to do with instigating that matter, he does not represent the Republic of Ecuador.  Nor are the Individual Petitioners parties in the Lago Agrio litigation.  The rationale underlying the principle that discovery by one litigant from the attorney for the litigant's adversary is discouraged therefore does not apply to the Individual Petitioners.

The policy regarding depositions of adversary counsel is not as palpably irrelevant with respect to Chevron.  But it does not carry the day here even as to it.  As an initial matter,

---

[12] *See, e.g.,id.* CRS-138-02-01 ("The judge is going to appoint a guy in Ecuador, um, to be the expert but really, you know, we'll be supporting him with the work – our people, E-Tech, whoever we choose to use."); CRS-158-02-09 (Donziger discusses the advantages and disadvantages of E-Tech's participation in the global assessment.  Donziger does not know if E-Tech will be "comfortable with the plan"); CRS-191-00-03 ("*[T]he work isn't going to be the expert's*")(emphasis added).

6

Donziger is not representing the Lago Agrio plaintiffs before the Ecuadorian courts. He is not admitted to practice there. While he is a member of the New York Bar and presumably benefits from his legal training, there is abundant evidence in the outtakes that Donziger's role in connection with events in Ecuador has been at least primarily in capacities other than that of an attorney. His principal functions have included lobbying, media and press relations, and politics. He has acknowledged in the outtakes that the purported civil litigation in Ecuador "is not a legal case. It's a political battle" in which "[w]e need to get the politics in order in a country that doesn't favor people from the rainforest."[13] On another occasion he said:

> "Hold on a second, you know, this is Ecuador, okay. You can say whatever you want. In the end of the day, there's a thousand people around the courthouse. You're going to get what you want. * * * At the end of the day, this is all for the Court, just a bunch of smoke and mirrors . . ."[14]

Donziger's role at least in major respects is that of a political operative, not a lawyer. Moreover, Donziger admitted in March 2007 that he had not done legal work in two years.[15] While this comment perhaps was offered in a somewhat jocular vein, there is substantial truth to it.

In any event, the risk of encountering privileged material is relatively low given that the subpoena requests are largely related to interactions with third parties, including the court-appointed expert and Ecuadorian government officials, and any work of plaintiffs' experts submitted to the court-appointed expert are not protected by attorney-client privilege or the work product doctrine.

Third. Although Donziger claims that compliance with the subpoenas would be

---

[13] *Id.* CRS-060-00-04.

[14] *Id.* CRS-195-05-01.

[15] *Id.* CRS-198-00-06.

7

unduly burdensome, that claim is somewhat conclusory. Donziger speaks in terms of a "massive" number of documents and the possible need to produce thousands of them.[16] But no serious effort has been made to quantify the amount of time or effort that would be required. In any case, any burden on Donziger must be counterbalanced against the need for the documents, which is very great indeed.

In these circumstances, the Court is not prepared to find that any burden would be undue. Nor is the Court satisfied that the subpoenas are overbroad, especially given the highly relevant nature of the material sought.

Fourth. Donziger's privilege claims have been waived, are premature, or both. Insofar as he claims privilege with respect to the requested documents, the failure to file a privilege log as required by Local Civ. R. 26.2 and Fed. R. Civ. P. 26(b)(5) waived the objections.[17] His claims with respect to questions that might be asked of him at the deposition cannot be resolved in the abstract.[18] The specific communications or other materials with respect to which privilege may be claimed have not been identified. Nor is there a sufficient basis for determining whether any such communications or materials were made when Donziger was functioning as a lawyer as opposed to

---

[16] Donziger Aff., at 3.

[17] *UBS Intern Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, No. 09 Civ. 4286(LAK), 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010); *Five Borough Bicycle Club v. City of New York*, No. 07 Civ. 2448 (LAK), 2008 WL 704209, at *3 (S.D.N.Y. Mar. 10, 2008)(collecting cases).

Provided that Donziger files a complete privilege log on or before October 29, 2010, the Court in the exercise of its discretion may relieve him of the waiver. As he has had the subpoenas since August 9, 2010 and was told on September 23, 2010 that he would be well advised to pull the requested materials together, this is ample time. Tr., Sept. 23, 2010, at 76:22-77:2.

[18] *See, e.g., In re Application of Chevron Corp.*, No. 10 MC 0001 (LAK), 2010 WL 3489341, at *7-8 (S.D.N.Y. Sept. 7, 2010).

performing another role.  Also lacking, among other things, is any information as to whether the communications or other materials were made and kept in confidence or disclosed to persons who would have been outside any privilege.  Accordingly, Donziger's privilege claims, to whatever extent they have not been waived, are premature at best.  The Court does not now intimate any view with respect to the contention that the crime-fraud exception vitiates any otherwise applicable privilege.[19]

\* \* \*

In all the circumstances, the motions of Donziger and the Lago Agrio plaintiffs to quash the  subpoenas to Donziger are denied.  Donziger shall comply with them forthwith.

The Court hereby appoints Max Gitter, Esq. as special master to preside over the deposition.  The special master shall rule on objections and make such findings of fact and conclusions of law as may be appropriate to that end.  The special master is authorized to direct the witness to answer questions. In the event that the special master directs a witness to answer a question as to which privilege is claimed and the objector wishes to seek review from this Court, the question need not be answered pending this Court's ruling, provided review is sought by motion

---

[19] In other Section 1782 proceedings brought by Chevron outside of this district, other courts have concluded that the crime-fraud exception applies here. *In re Chevron Corp.*, No. 10-MC-21JH/LFG [DI 11] (D.N.M. Sept. 13, 2010) (finding "that . . . discussions trigger the crime-fraud exception, because they relate to corruption of the judicial process, the preparation of fraudulent reports, the fabrication of evidence, and the preparation of the purported expert reports by the attorneys and their consultants."); *In re Application of Chevron Corp.*, No. 10-cv-1146-IEG (Wmc) [DI 9] (S.D. Cal. Sept. 10, 2010) (crime-fraud exception applies because "[t]here is ample evidence in the record that the Ecuadorian Plaintiffs secretly provided information to Mr. Cabrera, who was supposedly a  neutral court-appointed expert, and colluded with Mr. Cabrera to make it look like the opinions were his own."); *Chevron Corp. v. Champ*, No. 1:10-mc-0027-GCM-DLH [DI 12] (W.D.N.C. Aug. 30, 2010) ("While this court is unfamiliar with the practices of the Ecuadorian judicial system, the court must believe that the concept of fraud is universal, and that what has blatantly occurred in this matter would in fact be considered fraud by any court. If such conduct does not amount to fraud in a particular country, then that country has larger problems than an oil spill.").  This Court need not yet reach that issue.

9

to this Court within 48 hours of the special master's ruling. This Court's review of privilege rulings by the special master and the facts upon which they are based shall be *de novo*. The fees and disbursements of the special master shall be born one-third by Chevron, one-third by the Individual Petitioners, and one-third by Donziger unless otherwise ordered.

       SO ORDERED.

Dated:       October 20, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)