UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
In re Application of                                            :
                                                               :
CHEVRON CORPORATION, et al.,                                    :        10 MC 00002 (LAK)
                                                               :
                                  Petitioners.                 :
                                                               :
This document applies to:  ALL CASES                           :
                                                               x
------------------------------------------------------------------

**CHEVRON CORPORATION'S COMBINED (1) REPLY IN SUPPORT OF ITS
MOTION FOR AN ORDER COMPELLING DONZIGER TO PRODUCE FORTHWITH
ALL DOCUMENTS RESPONSIVE TO CHEVRON'S SUBPOENA, INCLUDING ALL
DOCUMENTS ON HIS PRIVILEGE LOG ON WAIVER GROUNDS AND
(2) RESPONSE TO THE REPUBLIC OF ECUADOR'S MOTION TO INTERVENE**

GIBSON, DUNN & CRUTCHER LLP

200 Park Avenue, 47th Floor
New York, New York 10166-0193

Telephone: 212.351.4000
Facsimile: 212.351.4035

*Attorneys for Applicant Chevron Corporation*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................2

    A.    Having Failed to Obtain a Stay, Donziger and Plaintiffs Must
Comply with the October 20 Order and Produce All Responsive
Documents Immediately. .......................................................................2

    B.    Donziger and Plaintiffs Now Ask This Court to Amend the
October 20 Order, Which—According to Their Own Position—the
Court Cannot Do. ...................................................................................4

    C.    Donziger's Privilege Log Demonstrates His Privilege Assertions'
Bad Faith. ...............................................................................................6

    D.    The Republic of Ecuador's Opposition Is Untimely and Meritless. .......7

CONCLUSION ....................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*De Espana v. Am. Bur. of Shipping*,
   2005 WL 3455782 (S.D.N.Y. Dec. 14, 2005) ..................................................... 7

*Maness v. Meyers*,
   419 U.S. 449 (1975) ........................................................................................... 3

*Merck Eprova AG v. ProThera, Inc.*,
   670 F. Supp. 2d 201 (S.D.N.Y. 2009) ............................................................... 10

*Morisseau v. DLA Piper*,
   707 F. Supp. 2d 460 (S.D.N.Y. 2010) ................................................................ 3

*Sheikhan v. Lenox Hill Hosp.*,
   1999 WL 199010 (S.D.N.Y. Apr. 9, 1999) ......................................................... 8

*Toliver v. County of Sullivan*,
   957 F.2d 47 (2d Cir. 1992) .................................................................................. 5

*Unigene Labs., Inc. v. Apotex, Inc.*,
   2009 WL 3682179 (S.D.N.Y. Oct. 30, 2009) ..................................................... 5

*United States  v. Constr. Prods. Research, Inc.*,
   73 F.3d 464 (2d Cir. 1996) .................................................................................. 6

*United States v. Weissman*,
   195 F.3d 96 (2d Cir. 1999) .................................................................................. 9

*United States v. Weissman*,
   1996 WL 737042 (S.D.N.Y. Dec. 26, 1996) ...................................................... 7

**Rules**

Fed. R. App. P. 8(a) ...................................................................................................... 3

Fed. R. Civ. P. 26(b)(5) ................................................................................................ 2

Fed. R. Civ. P. 26(b)(5)(A) .......................................................................................... 5

S.D.N.Y. Civ. R. 26.2 ............................................................................................. 2, 5

**INTRODUCTION**

Nothing in the opposition briefs submitted by Donziger, plaintiffs, and the Republic of Ecuador changes the fact that this Court *already* ruled that Donziger waived his privilege claims and must produce *all* responsive documents—and that the Second Circuit refused Donziger's and plaintiffs' bid to stay that ruling pending appeal.  Time is up.  This Court should order Donziger to produce all documents immediately or face sanctions.

Donziger's and plaintiffs' oppositions further evidence their procedural gamesmanship to delay the production of responsive documents—which this Court ordered them to do "forthwith" more than a month ago.  *See* Dkt 86 at 8.  Neither that mandate nor the rest of this Court's October 20 Order was limited to documents that Donziger and plaintiffs independently decide are "non-privileged," as plaintiffs now argue.  *See* Dkt 114 at 1.  To the contrary, this Court expressly ruled that Donziger *waived* any privilege objections by failing to file a privilege log as required by the Federal and Local Rules.  Thus, the order to Donziger to comply with the subpoenas "forthwith" required him promptly to produce *all* responsive documents.  Ignoring the Rules once again, Donziger and plaintiffs bypassed this Court and filed an "emergency motion" for a stay directly with the Second Circuit.  Having withdrawn the motion for reconsideration in this Court, Donziger and plaintiffs were obligated—as soon as the Second Circuit vacated the temporary stay—to obey the October 20 Order.  This Court has jurisdiction to enforce its October 20 Order, and should order Donziger to produce all responsive documents immediately.

Donziger and plaintiffs now ask this Court to hold that they were not required to file a privilege log with their motions to quash, that they did not really waive their privilege objections, and/or that they are now relieved from waiver.  But Donziger and plaintiffs cannot simultaneously pursue their appeal *and* ask this Court to modify the order on which the appeal is based.  In any event, to the extent their oppositions could be construed as a belated request for discretionary

1

relief, this Court should reject that request.  On October 20, this Court gave Donziger and plaintiffs a second opportunity to litigate their privilege claims, but required Donziger to file a privilege log by October 29.  Donziger and plaintiffs deliberately passed up that opportunity.  Their procedural maneuvering should not be rewarded with yet another opportunity for delay.

Equally baseless is the last-minute appearance by the Republic of Ecuador ("Ecuador") and its attempt to assert privilege claims that already have been briefed, argued, decided, and appealed.  Ecuador's submission is untimely by a matter of months, and Ecuador therefore has waived any claim of a "common interest" with plaintiffs or any other privilege that would justify withholding documents.  Furthermore, Ecuador's "common interest" arguments are directly contradicted by Ecuador's and plaintiffs' vociferous objections—over many years and in many fora—to the mere suggestion that they are acting in concert.  Ecuador's opposition is nothing more than a transparent, last-ditch effort to help plaintiffs escape compliance with this Court's orders.

## ARGUMENT

### A.     Having Failed to Obtain a Stay, Donziger and Plaintiffs Must Comply with the October 20 Order and Produce All Responsive Documents Immediately.

On October 20, this Court ruled that "[i]nsofar as [Donziger] claims privilege with respect to the requested documents, the failure to file a privilege log as required by Local Civ. 26.2 and Fed. R. Civ. P. 26(b)(5) waived the objections."  Dkt 86 at 7.  Because he waived his privilege objections, Donziger was prohibited from withholding documents on privilege grounds in responding to the subpoenas, which he was ordered to do "forthwith."  *Id.* at 8.[1]

A party that disagrees with a court order can seek relief in the form of a motion for reconsideration or, if the order is final and appealable, by filing a notice of appeal.  Absent a stay,

---

[1]   As Donziger's counsel argued to the Second Circuit, "forthwith" meant "immediately," and "immediately" meant "without any lapse of time."  Dkt 114-1 at 13.

however, the party cannot simply ignore the order and hope it might be overturned.  A party "is obliged by law to comply with the . . . [o]rder unless and until it is stayed or reversed." *Morisseau v. DLA Piper*, 707 F. Supp. 2d 460, 461 (S.D.N.Y. 2010) (Kaplan, J.).  "Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." *Maness v. Meyers*, 419 U.S. 449, 459 (1975). Even where a party files a notice of appeal, a district court retains jurisdiction to enforce the underlying order if the party does not also obtain a stay.  As this Court recently held, "There is no inconsistency between this Court enforcing an order that remains in full force and effect notwithstanding [an] appeal from that order." *Morisseau*, 707 F. Supp. 2d at 461-62.

A full week after the October 20 Order—and without ever seeking a stay from this Court as required by the Federal Rules, *see* Fed. R. App. P. 8(a)—Donziger and plaintiffs filed a notice of appeal and an emergency stay motion with the Second Circuit.  When, at noon on October 29, the temporary stay issued by Judge Hall expired by its own terms and no order had been entered extending it, Donziger was obligated to comply with the subpoenas immediately.  He instead made the private determination to produce only selected documents because he believed Judge Hall would extend the temporary stay.  And when, on November 15, the Second Circuit issued an order denying the motion for stay pending appeal and vacating the temporary stay, Donziger, again pursuant to his own determination, produced *no* documents—not even the ones he had produced (and clawed back) on October 29.  Indeed, only *after* Chevron sought an Order to Show Cause did Donziger produce any documents at all.

Donziger and plaintiffs argue that their actions somehow were in good faith because the October 20 Order merely "*suggested* that . . . he had waived" any privilege objection, Dkt 112 at 2 (emphasis added), and "did *not* compel production of any privileged documents," Dkt 114 at 2.

Not only does this greatly misstate this Court's order, but it directly contradicts what Donziger and plaintiffs told the Second Circuit.  In seeking a stay, Donziger and plaintiffs asserted that the October 20 Order "*held* that 'the failure to file a privilege log . . . waived' Mr. Donziger's privilege claims."  Hendricks Decl., Ex. V at 15 (emphasis added).  Arguing irreparable harm, they pointed to the waiver ruling and claimed they would suffer "extraordinary injury" absent a stay—i.e., "*divulgence of virtually the entirety of Donziger's case file to their litigation adversary.*"  *Id.* at 10 (emphasis added).  Without a stay, they claimed, the appeal would become moot because "the production of privileged materials is at stake."  *Id.* at 17.  Confronted with these arguments, the Second Circuit refused to delay implementation of this Court's October 20 Order.

If the October 20 Order ordered only non-privileged discovery, why did Donziger go through the trouble of moving for reconsideration "of that part of the Order that found a waiver of privilege"?  Dkt 89 at 1.  Having now made the decision to withdraw that motion, and having lost on their attempt to obtain a stay, Donziger and plaintiffs must do what they represented to the Second Circuit they would be required to do *absent* a stay—immediately produce Donziger's case file, including any purported privileged materials, to Chevron and the individual applicants.

**B.    Donziger and Plaintiffs Now Ask This Court to Amend the October 20 Order, Which—According to Their Own Position—the Court Cannot Do.**

Plaintiffs contend that the November 4 Opinion somehow erased the waiver ruling and that the October 20 Order did not make any determination on privilege, at least not any final one.  *See* Dkt 114 at 2; *see also* Dkt 112 at 6.  Those contentions flatly contradict plaintiffs' and Donziger's representations to the Second Circuit that the October 20 Order was final and appealable as of right.  Indeed, in response to Chevron's Rule 28(j) letter informing the Second Circuit of this Court's November 4 Opinion, plaintiffs urged the Second Circuit to disregard that "post-appeal advisory opinion," arguing that "after Plaintiffs filed their notice of appeal of the October

20 Order, the district court did not have jurisdiction to amend or 'explain' the Order already on appeal." Hendricks Decl., Ex. W at 1.  Plaintiffs and Donziger cannot have it both ways.

Plaintiffs' reading of the November 4 Opinion is incorrect in any case.  The November 4 Opinion did *not* modify the October 20 ruling that Donziger waived his privilege claims.  Rather, the opinion further explained that Donziger, like anyone else, was required to file a privilege log when he moved to quash.  Dkt 97 at 49.  The opinion then explained that the *October 20 Order* offered Donziger a chance to file a privilege log "*notwithstanding* his failure to comply with FED. R. CIV. P. 26(b)(5)(A) and S.D.N.Y. CIV. R. 26.2." *Id.* (emphasis added).

Donziger and plaintiffs now ask this Court to modify the October 20 Order—either to hold that they never waived their privilege claims or to relieve them of the waiver ruling.  Tellingly, Donziger's opposition brief imports whole paragraphs, almost word-for-word, from his motion for reconsideration, which is no longer before this Court because Donziger withdrew it.  But if the appeal was properly filed, this Court lacks jurisdiction to reconsider its waiver ruling or relieve Donziger and plaintiffs of waiver.  *See Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992) ("the district court may *grant* a rule 60(b) motion after an appeal is taken only if the moving party obtains permission from the circuit court" and only after the circuit court "remand[s] the case, thereby returning jurisdiction over the case to the district court").

In any event, this Court should not exercise its discretion to relieve Donziger and plaintiffs of their waiver.  As Donziger concedes, he was fully capable of filing a privilege log by October 29.  *See* Dkt 112 at 6.  Although Donziger suggests his hands somehow were tied because of the Second Circuit's temporary stay, it was he who filed the premature appeal and sought the stay on that defective basis.  *See Unigene Labs., Inc. v. Apotex, Inc.*, No. 06 CV 5571 (RPP), 2009 WL 3682179, at *1 (S.D.N.Y. Oct. 30, 2009); *see also* Dkt 114-1 at 10–11.  Donziger

chose to forego a possible remedy in this Court and instead gambled on a stay from the Second Circuit and lost. That is hardly grounds for giving him yet another chance.

Finally, plaintiffs' contention that the Second Circuit would not have denied the stay had it known that "wholesale waiver of all privileges were at stake" is baseless. Dkt 114 at 4. The Second Circuit did not condition its decision on plaintiffs or Donziger only having to produce "non-privileged" documents or being able to litigate their privilege objections, which they waived by failing to timely file a privilege log.[2] Significantly, after the Second Circuit denied the stay motion, Donziger did *not* file his privilege log with this Court and ask for discretionary relief from waiver—presumably because doing so would further undercut his position that the October 20 Order was appealable. Donziger and plaintiffs cannot independently decide what portions of the October 20 Order they will obey and when.

## C.   Donziger's Privilege Log Demonstrates His Privilege Assertions' Bad Faith.

Even if Donziger could assert privilege claims at this late stage, his privilege log is so riddled with deficiencies and misrepresentations that it can only be viewed as intended to further obstruct discovery in this case and conceal Donziger's fraud. An adequate privilege log must "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996); *see also* S.D.N.Y. Civ. R. 26.2(a)(2)(A). Local Rule 26.2 further requires an explanation of the relationship between the parties to a communication when such relationship is not readily

---

[2] Waiver is one of the issues on appeal, and if the Second Circuit believed that Donziger and plaintiffs were likely to succeed on the merits of that issue, it could have entered a stay. It did not. Indeed, the transcript indicates that the Second Circuit had numerous reasons for denying the stay, including (1) lack of jurisdiction, "given the incomplete status of the proceedings in the district court," Dkt 114-1 at 9; and (2) Donziger and plaintiffs' failure to show that asking this Court for a stay first was impracticable, *see id.* at 12-14.

apparent by naming the parties alone.  Donziger's privilege log falls far short of this standard.[3]

Moreover, a significant number of entries insufficiently describe the basis for the privilege asser-

tion.  *See, e.g.*, Hendricks Decl., Ex. T, Entry Numbers 2177–2221, 2269–72 ("Draft summary of

thoughts on Lago Agrio Litigation"), 4776–78 ("communications between counsel and client re-

garding legal issues in Ecuador").  These are merely examples.  The entire privilege log suffers

from these and other material deficiencies.[4]

**D.   The Republic of Ecuador's Opposition Is Untimely and Meritless.**

More than three months ago, Chevron served Ecuador with a copy of this Court's order

granting Chevron's *ex parte* application under Section 1782.  *See* Dkt 5 at 3.  Chevron has served

Ecuador with each one of its pleadings since then.  But throughout this entire period, Ecuador

has remained completely silent.  Then, on Friday morning, Ecuador moved to intervene and op-

posed in part Chevron's motion to compel.  Chevron does not object to Ecuador's intervention.

But this Court should not countenance Ecuador's "wait and see" approach to its "privilege" ob-

jections.  On notice of this proceeding from the very beginning, Ecuador affirmatively decided

not to intervene or assert a privilege claim until after such claims had been briefed, argued, and

decided in this Court *and* appealed to the Second Circuit.  Therefore, Ecuador waived any privi-

lege objection in this proceeding.[5]  *See De Espana v. Am. Bur. of Shipping*, No. 03 Civ. 3573

---

[3]  As just one of countless examples, in one entry Donziger describes an email sent to Vanity Fair reporter Wil-
liam Langewiesche as an "Email between Plaintiff's counsel and Plaintiff's consulting expert."  *See* Hendricks
Decl., Ex. T, Entry Number 5131.  The log also contains multiple entries covering communications with the ce-
lebrity Trudie Styler, the rock musician Sting's wife.  *See id.*, Entry Numbers 790, 791, 2363, 7343.

[4]  In addition, Donziger improperly asserts the "common interest privilege" with Ecuador, Amazon Watch, and
others as a stand-alone privilege.  But the common interest doctrine is "merely an extension of the attorney-
client privilege and the work-product doctrine which confers no independent privileged status to documents or
information."  *United States v. Weissman*, No. S1 94 CR 760 (CSH), 1996 WL 737042, *7 (S.D.N.Y. Dec. 26,
1996) (internal quotation marks omitted).

[5]  For this reason, Ecuador's claim that Donziger "is powerless to waive the Republic's privilege," Dkt 115 at 12,
is irrelevant.

(LTS) (RLE), 2005 WL 3455782, at *4 (S.D.N.Y. Dec. 14, 2005) (holding that "inordinate delay

in seeking judicial intervention . . . supports a finding of waiver of any privilege otherwise appli-

cable"); *Sheikhan v. Lenox Hill Hosp.*, No. 98 Civ. 6468 (WHP) (HBP), 1999 WL 199010, at *2

(S.D.N.Y. Apr. 9, 1999) ("The weight of authority holds that an unjustified failure to assert an

objection in a timely manner . . . results in a waiver of the objection or privilege." (citing cases)).

Had it believed it had a valid claim that any common-interest privilege applies in this

case, Ecuador undoubtedly could have—and should have—intervened at the beginning of this

proceeding and filed a motion to quash the subpoena.[6]  Ecuador's only ostensible explanation for

its failure to do so is its assertion that it supposedly was not clear until Chevron filed its motion

to compel that Chevron seeks discovery of communications between Ecuador and Donziger or

plaintiffs.  Dkt 115 at 2.  That is nonsense.  The subpoena expressly sought such communications

on its face.  *See, e.g.*, Aug. 4, 2010 Hendricks Decl., Ex. RR at 24 (seeking "All

COMMUNICATIONS between [Donziger] or . . . the GOVERNMENT OF ECUADOR . . .

RELATING TO," among other things, "the LAGO AGRIO LITIGATION"); *see also id.* at 7

(defining "GOVERNMENT OF ECUADOR" to include Ecuador's attorneys).

Even if Ecuador's objections were timely, its last-minute claims of a common-interest

privilege cannot be reconciled with previous staunch denials—by both Ecuador and plaintiffs.

Earlier this month, Ecuador expressly represented to the Second Circuit that it "did not contest

Chevron's application for discovery" in this proceeding.  Hendricks Decl., Ex. X at 1.  And

while Ecuador relies on the "commercial cases BIT arbitration" as a reason for its entering a

---

[6]  In a related Section 1782 proceeding in the District of Colorado, Ecuador intervened and filed a motion to quash.  *See Chevron Corp. v. Stratus Consulting, Inc.*, No. 1:10-cv-00047-MSK-MEH (D. Colo.), Dkt 39 (Apr. 6, 2010).  And in the District of Columbia, Ecuador entered its appearance within 13 days of the district court's order to show cause.  *See In re Applic. to Issue a Subpoena*, No. 1:10-mc-00370-CKK-DAR (D.D.C.), Dkt 9 (June 22, 2010).

"common interest" relationship with plaintiffs (Dkt 115 at 7), on January 26, 2009, Ecuador represented to that arbitral tribunal that the Lago Agrio litigation was "irrelevant" to the commercial cases BIT arbitration. *Id.*, Ex. Y ¶ 104.[7]  Similarly, in August, plaintiffs represented to the Second Circuit that they are "indifferent" as to which of Chevron or Ecuador bears the ultimate cost of paying plaintiffs' claims; that they are "not in bed with the Republic of Ecuador"; that such a suggestion is "offensive" to them and "offensive to the—the Republic"; and that they "don't really have a dog in that fight [the Treaty Arbitration]." *Id.*, Ex. BB at 84:12–85:11, 85:19–20.

Nor has Ecuador established that there was a joint litigation agreement in place when the disclosures were made—or that there is even such an agreement in place today.  *See United States v. Weissman*, 195 F.3d 96, 99 (2d Cir. 1999) (confirming that the party claiming common-interest protection bears the burden of establishing the existence of a joint defense agreement). An affidavit from Ecuador's counsel, Mr. Bloom, refers vaguely to a "joint defense or common interest agreement with the *Lago Agrio* plaintiffs" and asserts that certain "inter-counsel communications were made upon the express agreement that they would be kept confidential."  Dkt 117 ¶¶ 9, 27.  But the affidavit does not assert that the parties entered into an *actual* joint defense agreement, and Ecuador has not produced any such agreement.[8]  The reason is obvious:  A joint

---

[7]  Furthermore, Mr. Bloom claims that Ecuador and plaintiffs entered into their "joint defense or common interest" arrangement approximately five years ago in order to "overcome" Ecuador's "information deficit" relating to the Lago Agrio litigation.  *See* Dkt 117 ¶ 9.  Yet earlier this year, Mr. Bloom and his colleagues represented, both to this Court and to the BIT Arbitration tribunal, that they did not have information about the Lago Agrio case and could not obtain such information in a timely manner.  *See* Hendricks Decl., Ex. Z at 24 (arguing that permitting the BIT Arbitration to proceed would force Ecuador to "sift through years' worth of evidence, testimony and filings, regarding a case to which it has never been a party"); Ex. AA ¶ 14 (arguing that Ecuador is unable to respond to Chevron's allegations concerning the Lago Agrio proceeding because those facts "are simply not known to, or cannot be verified in time by, the Respondent which is not a party thereto").

[8]  Even if there were some sort of arrangement between the parties, it cannot be a valid "joint defense agreement" because Ecuador asserts that it is not even entitled to view the supposedly privileged documents in Donziger's

[Footnote continued on next page]

9

defense agreement between plaintiffs and Ecuador would be yet another example of collusion between plaintiffs and the government of Ecuador with respect to the Lago Agrio litigation.

Behind these contradictions lies the truth:  Ecuador and the plaintiffs never "entered into" any "joint defense" or "common interest" agreement.  "Common interest" is the post-hoc label they now attach to their joint efforts to defraud Chevron—because calling it that might help them conceal their fraud.[9]  For the common interest doctrine to apply, however, Ecuador must demonstrate that it and plaintiffs "have a common *legal*, rather than *commercial*, interest."  *Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 211 n.4 (S.D.N.Y. 2009) (emphases added).  Clearly, the only "interest" the Republic and plaintiffs share is a commercial interest—and that interest is decidedly *not* legal.  Thus, while the Republic insists that "[c]ommunications made 'in the course of an ongoing common enterprise and intended to further that enterprise are protected'" (Dkt 115 at 9), that rule does not apply to the kind of enterprise at issue here.

## CONCLUSION

Steven Donziger should be compelled to comply with this Court's October 20 Order and produce forthwith all responsive documents, including all documents on his privilege log.

Dated: November 22, 2010          Respectfully submitted,
New York, New York             GIBSON, DUNN & CRUTCHER LLP

---

[Footnote continued from previous page]

possession.  *See* Dkt 117 ¶ 30 (stating that Donziger's counsel will not "afford[] [Ecuador] the opportunity to review" the documents over which it claims common interest protection).

[9]  Indeed, it is difficult to imagine why Ecuador would ever enter into any such arrangement with plaintiffs, when plaintiffs—if pursuing valid claims rather than simply trying to extort a massive settlement out of a large American oil company—should be suing Petroecuador.  Since Petroecuador took sole ownership of the former concession area in 1992, it has significantly expanded its operations, more than doubling the number of wells and earning over $94 billion in revenue—little of which it has spent on its environmental responsibilities.  Petroecuador has been responsible for more than 1,400 separate crude spills in the Oriente in the last ten years alone.  Some of plaintiffs' lawyers recognize that they should be suing Petroecuador.  *See* Hendricks Decl., Exs. CC, DD ("Pablo says in the e-mail that Steven forwarded that if it were up to him, he'd say yes, they are going to sue PetroEcuador").  But Donziger has insisted that they pursue only Chevron because he can't get a "juicy check" out of Ecuador.  Dkt  41 at Ex. A, 116-01-1.  In Donziger's own words, "the government here will never pay for any judgment.  In contrast, Texaco can pay."  *Id.*

By:    /s Randy M. Mastro
        Randy M. Mastro

Scott A. Edelman
2029 Century Park East
Los Angeles, California 90067
Telephone: 310.552.8500
Facsimile:  310.551.8741

Andrea E. Neuman
3161 Michelson Drive
Irvine, California 92612
Telephone: 949.451.3800
Facsimile:  949.451.4220

200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile:  212.351.4035

William E. Thomson
333 S. Grand Ave.
Los Angeles, California 90071
Telephone: 213.229.7891
Facsimile:  213.229.6891

Attorneys for Applicant Chevron Corporation