UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
In re Application of

CHEVRON CORPORATION                                    10 MC 00002 (LAK)

This Document Applies to ALL CASES
------------------------------------------------------------------- x


### MEMORANDUM OPINION
### (Corrected)

Appearances:


Randy M. Mastro                         Bruce S. Kaplan
Scott A. Edelman                        Robert D. Kaplan
Kristen Hendricks                       FRIEDMAN KAPLAN SEILER & ADELMAN LLP
Andrew E. Neuman                        *Attorneys for Steven R. Donziger*
William E. Thomson
GIBSON DUNN & CRUTCHER LLP              Ilann M. Maazel
*Attorneys for Chevron Corporation*    Jonathan S. Abady
                                        Adam Pulver
Paul E. Dans                            O. Andrew F. Wilson
Jorge A. Mestre                         EMERY CELLI BRINCKERHOFF & ABADY LLP
Andrés Rivero                          *Attorneys for Lago Agrio Plaintiffs*
RIVERO MESTRE & CASTRO
*Attorneys for Rodrigo Pérez Pallares*  C. MacNeil Mitchell
                                        Eric W. Bloom
Alan Vinegrad                           WINSTON & STRAWN
Jason P. Criss                          *Attorneys for Proposed Intervenor Republic of*
John Han                                *Ecuador*
COVINGTON & BURLING LLP
*Attorneys for Ricardo Reis Veiga*


LEWIS A. KAPLAN, *District Judge.*

        Chevron is the target of litigation brought in Ecuador by the so-called Lago Agrio

plaintiffs[1] in which the latter seek to recover $113 billion[2] for alleged environmental pollution by Texaco, Inc. ("Texaco"), from Texaco's current owner, Chevron Corporation ("Chevron").[3] Rodrigo Pérez Pallares and Ricardo Reis Veiga (the "Individual Petitioners") are facing criminal charges there as a result of having signed a settlement of pollution claims on behalf of Texaco some years ago.  The criminal charges at least in part are a result of an alliance between the Lago Agrio plaintiffs and the Ecuadorian government, which has both financial and political interests in the success of the lawsuit.   Chevron and the Individual Petitioners have been seeking to defend themselves by obtaining discovery in the United States under Section 1782 of the Judicial Code,[4] which they believe will demonstrate that both the civil litigation and the criminal prosecution in Ecuador have been tainted by fraud and other misconduct by the Lago Agrio plaintiffs and improper collusion among them and the government of Ecuador ("GOE").

This Court previously has recognized the urgency of the interests of Chevron and the Individual Petitioners.  The Second Circuit has done so as well.[5]  The reason is that the parties are

---

[1]     The Lago Agrio plaintiffs are forty-eight individuals.

[2]     In September 2010, the Lago Agrio plaintiffs raised their damages assessment, in a submission to the Lago Agrio court, to $113 billion at the high end of the range, which is significantly greater than the $27 billion figure in the report published by the supposedly independent court-appointed expert.

[3]     Chevron acquired Texaco in 2001, after Texaco discontinued operations in Ecuador and settled environmental claims with its government.

[4]     28 U.S.C. § 1782.

[5]     In *In re Application of Chevron Corp.,* 709 F. Supp.2d 283, 309 (S.D.N.Y. 2010) ("*Chevron I*"), a previous Section 1782 application that sought to compel production by a filmmaker of outtakes from a documentary film concerning the Ecuadorian litigation, this Court ordered production.  The Circuit expedited the appeal, and the panel took the extraordinary step

engaged in a race.  The Individual Petitioners face a preliminary hearing on January 5, 2011 which will determine whether they must stand trial in Ecuador on allegedly tainted criminal charges. Chevron faces the possibly imminent entry of an allegedly tainted multi-billion dollar judgment in the Lago Agrio litigation.  Chevron and the Individual Petitioners seek evidence that they hope will demonstrate that the proceedings against them have been tainted and, almost as important, to obtain it in time to use it in Ecuador and, in Chevron's case, in international arbitration proceedings against the Republic of Ecuador. Both the Lago Agrio plaintiffs and the GOE have refused to stay or cooperate in efforts to stay the Ecuadorian proceedings pending resolution of this and other efforts by Chevron and the Individual Petitioners to obtain proof of their allegations through the collection of evidence in the United States.[6]

In this proceeding, Chevron and the Individual Petitioners obtained subpoenas requiring Steven Donziger, a New York attorney involved with the Lago Agrio plaintiffs, to submit to a deposition and to produce documents.  On October 20, 2010, the Court denied motions to quash made by both Donziger and the Lago Agrio plaintiffs, held that all claimed privileges had been waived by the failure to submit a privilege log, directed that Donziger comply with the subpoenas

---

immediately after oral argument and before the issuance of an opinion of directing the filmmaker to "promptly turn over to the petitioners copies of all footage that does not appear in publicly released versions of *Crude* showing: (a) counsel for the plaintiffs in the case of *Maria Aguinda y Otros v. Chevron Corp.*; (b) private or court-appointed experts in that proceeding; or  (c) current or former officials of the Government of Ecuador."  *In re Application of Chevron Corp.*, [DI 277] No. 10-1918 (2d Cir. filed July 15, 2010).

[6]     *E.g., In re Application of Chevron Corp.*, __ F. Supp.2d __, No. 10 MC 00002 (LAK), 2010 WL 4449197, at *3 (S.D.N.Y. Nov. 5, 2010) ("*Chevron II*");  *Chevron I*, 709 F. Supp.2d at 309; Tr., Nov. 22, 2010, at 79:24-82:15 (comments of counsel for GOE in response to inquiry concerning possible cooperation in seeking stay of Ecuadorian proceedings).

"forthwith," and appointed a special master to preside over the deposition.[7]

At this point, Donziger has produced some of the documents demanded by the subpoena. Instead of producing the balance, however, he submitted, on November 15, 2010, a purported privilege log – which is over 2,000 pages long and claims privilege as to 8,652 documents – and contends that he now should be permitted to litigate those privilege claims. The log includes claims of privilege as to approximately 2,500 or more documents sent or disclosed to a public relations person, the founder of the Amazon Defense Front or La Frente, Amazon Watch, the *Wall Street Journal*, Bloomberg News, Conde Nast, *The New York Times,* and the *Los Angeles Times.* Moreover, the 8,652-item privilege log lists not even one document that was written by or addressed to any of the Lago Agrio plaintiffs – the clients whose privilege supposedly is being asserted.

Chevron and the Individual Petitioners now move by order to show cause for an order requiring Donziger to do what the October 20, 2010 order already required – to produce all of the responsive documents forthwith. The Republic of Ecuador ("GOE") also moves for leave to intervene, claiming that it shares a common interest privilege with the Lago Agrio plaintiffs.

*Facts*

The background of this litigation is amply set forth in the Court's prior opinions, familiarity with which is assumed.[8] The Court therefore turns to the prior proceedings that frame

---

[7] *In re Application of Chevron Corp.*, ___ F. Supp.2d ___, No. 10 MC 00002 (LAK), 2010 WL 4118093 (S.D.N.Y. Oct. 20, 2010) ("*Summary Order*").

[8] *Chevron I*, 709 F. Supp.2d 283 (ordering filmmaker to produce outtakes shot in connection with documentary film concerning litigation); *In re Application of Chevron Corp.,* ___ F. Supp.2d ___, No. 10 MC 00001 (LAK), 2010 WL 3489341 (S.D.N.Y. Sept. 7, 2010) (granting application to compel deposition of filmmaker); *Summary Order*, 2010 WL

the present issues.

*The Summary Order*

Donziger and the Lago Agrio plaintiffs moved to quash the subpoenas on a variety of grounds including, among others, the claim that they called for the production of materials protected by the attorney-client privilege and the work product doctrine.  They did not, however, submit a privilege log as required by the rules.  Given the Individual Petitioners' and Chevron's urgent need for appropriate discovery, the Court ruled on the motions to quash by summary order, indicating that a full opinion would follow.  Four aspects of the Summary Order are of particular relevance here:

First, it held that the privilege and work product objections with respect to deposition *testimony* by Donziger were premature and could be dealt with only in the context of specific questions posed to him at the deposition.[9]

Second, it held that any privilege and work product claims with respect to the subpoenaed *documents* had been waived by the failure to submit a privilege log as required by S.D.N.Y. CIV. R. 26.2 and FED. R. CIV. P. 26(b)(5).[10]  It stated, however, that the Court might, "in the exercise of its discretion[,] . . . relieve [Donziger] of the waiver" if he "file[d] a complete privilege log

_____

4118093 (denying motions to quash subpoenas to Donziger); *Chevron II,* 2010 WL 4449197 (full opinion explaining decision to deny motions to quash Donziger subpoenas).

[9]     *Summary Order*, 2010 WL 4118093, at *4.

[10]     *Id.* at *4.

on or before October 29, 2010."[11]

    <u>Third</u>, it directed Donziger to comply with the subpoenas "forthwith."[12]  That is, it directed him both to testify and to produce all of the requested documents without delay.

    <u>Fourth</u>, it appointed a special master to preside at the deposition and to resolve, subject to review by this Court, any privilege and work product claims made in response to specific questions posed to Donziger.[13]

*Subsequent Proceedings in this Court*

    On October 25, 2010, Donziger moved in this Court for reconsideration of the Summary Order "solely to the extent that the Order holds that '[i]nsofar as [Donziger] claims privilege with respect to the requested documents, the failure to file a privilege log as required by Local Civ. R. 26.2 and Fed. R. Civ. P. 26(b)(5) waived the objections.'"[14]  As will appear, Donziger subsequently purported to withdraw that motion although he still seeks the relief it requested.

---

11

   *Id.* at *4 n.17.  The Court's references to Donziger of course were meant to embrace as well the Lago Agrio plaintiffs, whose privileges and protection Donziger was claiming.

12

   *Id.* at *4.

   As Donziger's counsel has acknowledged before the Court of Appeals, "Forthwith means immediately. Immediately means without any lapse of time."  Lago Agrio Mem., Ex. A [DI 114-1] at 14.

13

   *Summary Order*, 2010 WL 4118093, at *4.

14

   Donziger Mot. [DI 88], at 1.

   On November 8, 2010, this Court issued an order stating that it was not entirely clear that it had jurisdiction to reconsider any aspect of the Summary Order given the pendency of the appeals.  It stated further, however, that it would decide the motion once the appeals were disposed of.  *In re Chevron Corp.*, [DI 100] No. 10 MC 00002 (S.D.N.Y. Nov. 8, 2010).

On November 5, 2010, this Court issued *Chevron II,* its full opinion amplifying the reasoning underlying the Summary Order.  Contrary to suggestions now made by the Lago Agrio plaintiffs, *Chevron II* did not alter the Summary Order's direction that Donziger produce *all* documents sought by the subpoenas.

*Proceedings in the Court of Appeals*

On October 26 and 27, 2010, the  Lago Agrio plaintiffs and Donziger, respectively, filed notices of appeal from the Summary Order,[15] and the Lago Agrio plaintiffs sought a stay in the Court of Appeals.[16]  On the latter day, a judge of the Court of Appeals stayed the Summary Order until noon on October 29, 2010.[17]  That stay expired by its terms, but was reinstated later on October 29, 2010 pending consideration by a three-judge motions panel.[18]  The panel vacated the stay on November 15, 2010.[19]

*The Withdrawal of Donziger's Reconsideration Motion*

During the proceedings on the stay motion in the Court of Appeals, Chevron pointed

---

[15]

DI 90, 91.

[16]

In so doing, they ignored FED. R. APP. P. 8(a)(1) ("A party must ordinarily move first in the district court for . . . a stay . . . pending appeal").

[17]

2d Cir. DI 10 (such references are to the items on the Second Circuit docket sheet in No. 10-4341).

[18]

*Id.* DI 49.

[19]

*Id.* DI 120.

out, *inter alia,* that the Court of Appeals lacked jurisdiction over the appeals from the Summary

Order because the Summary Order was not final in view of the reconsideration motion pending in

this Court.[20]   It contended as well that the Summary Order had left open the possibility that this

Court would relieve Donziger and the Lago Agrio plaintiffs of their privilege waiver with respect

to the subpoenaed documents.   Pressed at oral argument by at least one member of the panel of the

effect of the pending reconsideration motion,[21] Donziger purportedly withdrew it.[22]

*Subsequent Proceedings in the District Court*

    Donziger ultimately produced a privilege log on or about November 15, 2010 –

nearly three months after moving to quash the subpoenas and 17 days after the October 29, 2010

date mentioned in the Summary Order. Chevron then moved by order to show cause for an order

requiring "Donziger to produce forthwith all documents responsive to Chevron's subpoena," an

order which provided also that nothing therein was to "be construed to imply that Donziger is not

already in violation of a previous order [the Summary Order] that required the production forthwith

of all documents responsive to the subpoena."[23]

    Two days later, and just one business day before the argument of the Chevron-

Individual Petitioner motions to compel Donziger to comply with the Summary Order, the GOE

---

[20]

    *Id.* DI 17, at 9-10.

[21]

    Lago Agrio Mem., Ex. A [DI 114], at 4.

[22]

    DI 107.

[23]

    DI 105.

moved for leave to intervene, claiming an interest in protecting certain documents shared between it (or its counsel) and Donziger.[24]  In the interest of brevity, the Court reserves further discussion of the circumstances of that application intervention until later in this opinion.

*Discussion*

A.        *The Positions of the Parties*

Chevron and the Individual Petitioners now seek an order requiring Donziger to produce all documents sought by the subpoenas, including the 8,652 as to which he now claims privilege on the privilege log he eventually submitted.  Donziger, the Lago Agrio plaintiffs, and the GOE resist any such order.  The starting point is to consider exactly where matters stand.

This Court on October 20, 2010 held that any privilege claims had been waived and directed Donziger to comply with the subpoenas "forthwith" – meaning, to quote Donziger's counsel as he implored the Second Circuit to stay the Summary Order, "[i]mmediately[,] . . . without any lapse of time."  As the privilege claim had been rejected unequivocally, that quite clearly meant that Donziger was obliged to produce all requested documents.

Donziger did not comply with the Summary Order insofar as it applied to documents between October 20 and October 27, when it was stayed until noon on October 29.  He did not comply with it upon its expiration.  And while it was stayed again later on October 29 until November 15, he has not complied since, at least to the extent that he has not produced the 8,652 documents listed on the November 15 privilege log  Nor can he justify that failure by reference to the Court's indication, in the Summary Order, that it *might* relieve him of the waiver if a proper

---

[24]    DI 113.

privilege log was submitted by October 29, 2010.  That order did not qualify the direction to comply "forthwith," and it most certainly never said that submission of a privilege log *would* relieve Donziger and his clients of the waiver.[25]  Donziger therefore was in violation of the Summary Order from October 20 until October 27, and he has been violating it ever since the Court of Appeals vacated its stay on November 15, 2010.

In this context, Donziger contends that he should not be ordered "to turn over each and every document as to which he claims a privilege, without any review and without consideration of whether the documents are in fact privileged"[26] because he now has submitted a privilege log. He thus asks this Court to excuse the belated production of the privilege log and to relieve him of the waiver that the Summary Order held had occurred.  In short, he seeks both to have his cake and to eat it.  He wants the Court of Appeals to accept at face value the withdrawal of his motion for reconsideration of this Court's waiver holding, thus in Donziger's view removing one obstacle to appealability of the Summary Order.  Yet he wants this Court in substance to reconsider that precise holding, to deny the present motion on that basis, and then to adjudicate his privilege claims on their merits.

The Lago Agrio plaintiffs, represented for this purpose by counsel other than Donziger, purport to adopt Donziger's arguments.  But they contend also, and inconsistently with

---

25

       Nor did Donziger submit the privilege log by October 29, the deadline that the Court had fixed.  The Court of Appeals' orders of course stayed the Summary Order, and its requirement that the documents be produced, for 19 days.  But Donziger never was under any *obligation* imposed by the Summary Order to produce any privilege log at all.  The stay of that order therefore did not prevent Donziger from producing a privilege log by October 29, 2010.

26

       Donziger Mem. [DI 112] at 1-2.

Donziger, that the pendency of the appeals permits this Court to enforce the Summary Order, but not to modify it,[27] and that the relief sought by Chevron and the Individual Petitioners would constitute such a modification.

As previously explained, the Summary Order explicitly held that all privilege claims had been waived and directed that Donziger comply with the subpoenas forthwith.  Donziger thus was obliged to produce the documents immediately.  The fact that the Court held out the possibility that it "might" relieve Donziger and his clients of the waiver if they submitted a privilege log by October 29 did not alter that obligation.  Moreover, both Donziger and the Lago Agrio plaintiffs well understood that, as evidenced by their repeated statements to that effect to the Court of Appeals:

• On October 27, 2010, the Lago Agrio plaintiffs, in seeking an emergency stay, told the Court of Appeals that the Summary Order "held (incorrectly as a matter of law) that Donziger waived all privileges as to all documents."[28] They further asserted that, "[a]bsent a stay, Donziger and the Lago Agrio plaintiffs will suffer irreparable injury *because they stand to lose their right to appeal*, *as the production and intended dissemination of the subpoenaed materials will likely deprive this Court of the ability to provide the Lago Agrio plaintiffs with any effective relief, rendering moot any appeals*."[29]

---

27

They rely on the principle that "the filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Lago Agrio Mem. [DI 114], at 1 (quoting *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982)).

28

2d Cir. DI 4, at 8.

29

*Id.* at 16-17 (emphasis added).

- They contended also that what was at stake on the motion for a stay was *"the production of privileged materials"*[30] and added that "*[c]ompliance with the order [would] destroy[] the right sought to be protected.*"[31]

- At oral argument in the Court of Appeals on November 15, 2010, counsel for Donziger represented to that Court that, "without a stay, the issues will not get decided *because the discovery will go forth immediately and appeal will be mooted*" and that "*the district court's order requires the litigation counsel . . . to turn over large parts of it's* [sic] *file* to the adversary counsel."[32]

- At the same oral argument, counsel for the Lago Agrio plaintiffs asserted that his clients, in the absence of a stay, "stand[] to lose not only its privilege with Mr. Donziger but because of the scope of the subpoena *requiring the production of all of Mr. Donziger's discussions with other attorneys, and anyone else connected with the case* over a 15 year period, my client stands to lose its privilege in its entirety."[33]

The suggestion by the Lago Agrio plaintiffs that *Chevron II* modified the Summary

---

*Id.* at 17 (emphasis added).

*Id.* at 17 (quoting *In re von Bulow,* 828 F.2d 94, 98 (2d Cir. 1987) (internal quotation marks omitted) (emphasis added) (bracketed word added)).

Lago Agrio Mem., Ex. A [DI 114-1] at 3-4 (emphasis added).

*Id.* at 17-18 (emphasis added).

Order so as to require only the production of concededly non-privileged documents[34] is even more baseless.   But *Chevron II* did no such thing.   The argument rests on statements in *Chevron II* that the Lago Agrio plaintiffs have wrenched entirely out of context.   A few simple points dispose of the argument readily.

First, *Chevron II* did no more than expand on the reasoning underlying the Summary Order.  It did not alter the order in any respect.[35]

Second, the statements in *Chevron II* to the effect that the denial of the motions to quash would require adjudication of claims of privilege, statements upon which the Lago Agrio plaintiffs rely heavily, are entirely consistent with the ruling in the Summary Order.  The Summary Order, in addition to holding that all privilege claims with respect to *documents* had been waived, required that Donziger submit to a *deposition*.  It recognized that claims of privilege almost certainly would  be raised in response to specific deposition questions.  No one had even suggested, and the Court had not determined, that privilege objections to deposition questions had been waived.[36] Thus, the denial of the motion to quash necessarily would require determination of such privilege claims. The Court therefore appointed a Special Master to preside at the deposition and to rule on such

---

[34] Lago Agrio Mem. [DI 114], at 1-2 ("As this Court explained in its November 4, 2010 Opinion, the Order on appeal compelled non-privileged discovery. . . . It did *not* compel production of any privileged documents. . . .  Applicants' motion to compel, however, seeks to modify the Order already on appeal in search of additional relief: the production of responsive, *privileged* documents.") (footnote and citation omitted) (emphasis in original)).

[35] Indeed, it concluded by stating that "[f]or the foregoing reasons, as well as those set forth in the Court's prior ruling, the motions to quash the subpoenas were denied in the exercise of the Court's discretion."  *Chevron II*, 2010 WL 4449197, at *23.

[36] To avoid any misunderstanding this is not to say that a waiver of privilege with respect to a particular document or documents might not result in a waiver with respect to the subject of a particular question, only that this issue has not arisen and has not been decided.

claims in the first instance.  By seizing on statements in *Chevron II* that refer to adjudication of privilege claims at deposition, the Lago Agrio plaintiffs ignore that context.[37]

Third, if the Lago Agrio plaintiffs (and, for that matter, Donziger) actually believed that *Chevron II* had modified the Summary Order to eliminate any requirement that the documents as to which privilege had been waived be produced immediately, they could not honestly have asserted to the Court of Appeals – on November 15 and thus well after the filing of *Chevron II* – that a stay  was required because, in its absence, "the discovery [would] go forth immediately," Donziger would have to turn over "large parts of [his] file," and that the Lago Agrio plaintiffs would lose their privilege as to communications "with Mr. Donziger . . .  [and as to] all of Mr. Donziger's discussions with other attorneys, and anyone else connected with the case."  Their own statements to the Court of Appeals are inconsistent with their argument here.

Finally, not only did *Chevron II* not modify the Summary Order to eliminate any requirement of producing documents as to which privilege might be claimed, it could not properly have done so if the Lago Agrio plaintiffs' position – viz., that the filing of the notices of appeal divested this Court of jurisdiction to modify the Summary Order – were correct.  The notices of appeal from the Summary Order were filed before *Chevron II.*  Hence, if the Lago Agrio plaintiffs' contention were correct, any purported modification of the Summary Order by *Chevron II* would have been ineffective for want of jurisdiction.

---

[37]  They argue from *Chevron II*'s statement that Donziger is obliged  to "give discovery as to non-privileged matters" that *Chevron II* "did *not* compel production of any privileged documents." Lago Agrio Mem. [DI 114], at 1-2 (emphasis added).  The conclusion, however, quite obviously does not follow for at least two reasons.  First, the Summary Order already had determined that all privilege claims, as to the requested documents, had been waived.   Those documents at that point became non-privileged, even assuming that they formerly had been privileged.  Second, Donziger of course was obliged to give testimony and produce documents that never came within any privilege.

B.      *The Court's Authority*

In this context, it first is appropriate to determine what lies within the Court's power.

Even the Lago Agrio plaintiffs concede that the Court has the power to enforce its orders.[38]  The Court therefore may require Donziger to turn over the documents.

The question of whether this Court has the power to modify the requirement that Donziger immediately turn over the 8,652 documents now listed in the privilege log and to proceed to adjudicate the privilege claims on their merits is not difficult either.

As noted previously, it has been said that "[t]he filing of a notice of appeal is an event of jurisdictional significance –  it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."[39]  But, contrary to the Lago Agrio plaintiffs' argument, the Second Circuit made clear in *United States v. Rodgers*[40] that:

> "The divestiture of jurisdiction rule is . . . not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed 'to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.' *United States v. Salerno,* 868 F.2d 524, 540 (2d Cir.) (citing *United States v. Claiborne,* 727 F.2d 842, 850 (9th Cir.), cert. denied, 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984)), *cert. denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989). Hence, its application is guided by concerns of efficiency and is not automatic. *See, e.g., Webb v. GAF Corp.,* 78 F.3d 53, 55 (2d Cir.1996) (district court is not divested of jurisdiction to grant a permanent injunction after an appeal from the district court's order granting a preliminary injunction); *Salerno,* 868 F.2d at 539-40 (frivolous appeal from district court order denying defendant's motion to dismiss based on double jeopardy does not displace district court jurisdiction to proceed to trial)."[41]

---

38      Lago Agrio Mem. [DI 114], at 1.

39      *Griggs,* 459 U.S. at 58.

40      101 F.3d 247 (2d Cir. 1996).

41      *Rodgers,* 101 F.3d at 251.

The question therefore is whether this Court is precluded as a matter of law by the pendency of the appeals from the Summary Order from dealing with the privilege issues on their merits if it were disposed to do so.  Two considerations militate against any such conclusion.

First, as the quoted passage from *Rodgers* makes plain, the judicial divestiture rule does not apply where an appeal is frivolous.  Nor does it apply to untimely or otherwise defective appeals.[42]  These are such appeals.

FED. R. APP. P. 4(a)(4)(B)(I) provides in substance that a notice of appeal filed after the announcement of judgment but before the disposition of a timely motion for reconsideration or other post judgment relief is ineffective until that motion is resolved.  That is why Donziger purportedly withdrew the motion.  But the purported withdrawal of the motion was a matter of form only, not of substance.  Donziger's position in opposition to the pending motion here is that this Court, in light of his eventual production of a privilege log, now should reverse its waiver ruling and consider the privilege claims on their merits.[43]  He thus seeks reconsideration of the waiver ruling in all respects save form.  In this context, the notices of appeal were and remain ineffective to trigger the divestiture of jurisdiction rule by virtue of FED. R. APP. P. 4(a)(4)(B)(I) because the purported withdrawal, in light of Donziger's present position here, lacked substance and did not "imbue[] the order appealed from with finality."[44]

---

[42]

 *Leonhard v. United States,* 633 F.2d 599, 609-11 (2d Cir. 1980), *cert. denied,* 451 U.S. 908 (1981); *Nat'l Council of La Raza v. Dep't of Justice,* 345 F. Supp.2d 412, 413 (S.D.N.Y. 2004), *aff'd,* 411 F.3d 310 (2d Cir. 2005).

[43]

 *See, e.g.,* Tr., Nov. 22, 2010 ("Tr."), at 23:21-30:15 (Donziger's counsel requesting that Court retract its waiver ruling because failure to produce privilege log allegedly not "willful and flagrant" or to "relieve us of that waiver.")

[44]

 *See Leonhard*, 633 F.2d at 611.

The result would be the same even if the divestiture of jurisdiction rule had been triggered upon the purported withdrawal of the reconsideration motion.  The Court of Appeals doubtless would not wish to determine whether the claimed privileges were waived by the failure to file a privilege log if this Court were disposed, in light of the subsequent filing of such a log, either to reconsider its holding or to relieve the claimants of the waiver and consider the objections on the merits. The interest in judicial economy that underlies the divestiture of jurisdiction rule would be disserved by any contrary conclusion.

Accordingly, there is no impediment to the Court taking whatever action it deems appropriate with respect to the motion before it and the privilege claims relating to the subpoenaed documents.

C.      *The Appropriate Course of Action*

Donziger argues that "no privilege log was required before the Court ruled on Donziger's motion" to quash and that his failure to have supplied such a log therefore should not have resulted in waiver.[45]   While the Court already has ruled on that question, it accepts his invitation to reconsider the waiver issue.

Both FED. R. CIV. P. 26(b)(5) and 45(c) and S.D.N.Y. CIV. R. 26.2 require the submission of a privilege log where a person served with a document request or subpoena objects to the production of requested documents on the ground of privilege.  Rule 26(b)(5) does not explicitly state exactly when the privilege log must be provided.  Rule 45 is more precise, requiring that a person objecting to a subpoena must serve either written objections or move to quash within

---

[45]      DI 89, at 5.

18

the earlier of the time fixed for compliance or fourteen days after service and, if withholding subpoenaed material on the ground of privilege, must provide a privilege log.[46]  It thus suggests strongly that the privilege log, absent judicial relief, must accompany any objections or motion to quash.  But Local Rule 26.2 is even more explicit.  Paragraph (c) states:

> "Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above shall be furnished in writing *at the time of the response to such discovery or disclosure, unless otherwise ordered by the court.*"[47]

This reflects a 1997 modification to the local rules "to specifically require that the privilege list . . . be furnished at the time of the response unless otherwise ordered by the court."[48]  Thus, in the absence of an extension of time or other relief from the Court – and none was sought or extended – the privilege log was due when Donziger and the Lago Agrio plaintiffs filed their motions to quash the subpoenas.

The purpose of Rule 26.2(c), which was derived from its predecessor, former S.D.N.Y. CIV. R. 46(e)(2), is equally plain.  It reflects the Court's "preference that parties 'raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.' ' "[49]

---

[46]      FED. R. CIV. P. 45(c)(2)(B), 45(c)(3)(A)(iii), 45(d)(2)(A).

[47]      S.D.N.Y. CIV. R. 26.2(c) (emphasis added).

[48]      2 MICHAEL SILBERG & EDWARD M. SPIRO, CIVIL PRACTICE IN THE SOUTHERN DISTRICT OF NEW YORK, § 22:12, at 22-28 to 22-29 (2d ed. 2008-09)(hereinafter SILBERBERG & SPIRO).

[49]      *Strougo v. BEA Assocs.,* 199 F.R.D. 515, 523 (S.D.N.Y. 2001) (quoting *In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir.1998) (considering objection to subpoena pursuant to Rule 45)).  *See also, e.g., See, e.g., Nextg Networks, of NY, Inc. v. City of New York,* No. 03 Civ. 9672 (RMB), 2005 WL 857433, at *2 (S.D.N.Y. April 13, 2005); *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.,* Nos. 93 Civ 5298 (LLM), 1998 WL 567862, at *2

Accordingly, the starting position is that the privilege log must be served with the objections or motion to quash and that the failure to do so may result in waiver of the privilege claims.

To be sure, there will be occasions when it is appropriate – in light of such matters as lack of any possible prejudice to the adversary, demonstrably undue burden and other factors – to defer privilege logs until after resolution of other issues.  But Rule 26.2(c) deals with that by permitting a party faced with a discovery obligation and wishing to more time for or to defer preparation of a privilege log to seek relief from the Court.

The Court is mindful of course that Rule 26.2(c) has not always been enforced rigidly,[50] even where the party against whom waiver is asserted neither has provided a timely privilege log nor sought an extension or other relief from the obligation to do so.  While some cases have enforced it strictly,[51] some have limited enforcement to situations in which there was no sufficient justification for the failure to produce a log on time or to seek leave to delay[52] and still

---

(S.D.N.Y. Sept. 3, 1998).

[50]     District judges in their discretion may decline to enforce local rules where appropriate.  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *Wight v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000).

[51]     *See, e.g., Ayers v. SGS Control* Services, No. 03 Civ. 9078 (RMB)(RLE), 2006 WL 618786, at *2 (S.D.N.Y. Mar. 9, 2006); *Smith v. Franklin Hosp. Med. Ctr.,* No. 04-CV-3555(LDW)(ARL), 2005 WL 2219294, at *2 (E.D.N.Y. Sept. 13, 2005); *A.I.A. Holdings, S.A. v. Lehaman Bros., Inc.*, No. 97 Civ. 4978 (LMM)(HBP), 2000 WL 1538003, at *3 (S.D.N.Y. Oct. 17, 2000).

[52]     *See, e.g., Lopez v. City of New York*, No. 05-CV-3624, 2007 WL 869590, at *3-4 (E.D.N.Y. Mar. 20, 2007); *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271 (RWS), 2006 WL 3771010, at *7-8 (S.D.N.Y. Dec. 15, 2006) (collecting cases); *Kitevski v. City of New York*, No. 04 Civ. 7402 (RCC) (RLE), 2006 WL 680527, at *4 (S.D.N.Y. Mar. 16, 2006); *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo,* No. 01 Civ. 8700 (SAS) (HBP), 2005 WL  545218, at *6 (S.D.N.Y. Mar. 8, 2005) (collecting cases).

others have spoken of enforcing it only in flagrant cases.[53]  One authority has suggested that the strict view is the better one, as a more lenient approach would encourage disregard of th rules.[54]  To suggest, however, that any of these lines of authority is binding would be an overstatement.  In any case, having accepted Donziger's invitation to reconsider the waiver issue, the Court considers itself free to take into account all relevant factors.

The first of these factors is the clarity of Rule 26.2(c) and Donziger's failure to seek relief from the Court.  These cut in favor of waiver:

> "It should be clear to all attorneys[,] . . . the Federal Rules of Civil Procedure and the Local Civil Rules are not starting points for a discussion concerning the handling of privileged documents nor are they merely suggested practice guidelines that attorneys are free to disregard. They are *rules,* and in the absence of a court Order or stipulation providing otherwise, they must be obeyed."[55]

This view is supported by our Circuit's holdings that an attorney's failure to adhere to a clear rule of court or of procedure rarely will be regarded as excusable neglect for purposes of granting relief under FED. R. CIV. P. 60(b).[56]

Second, Donziger's failure, even if the failure to submit the log with the motion to quash or to seek an extension of time initially was no more than inattention to the rule, quickly became something else.  The failure to provide the requisite privilege log was called to Donziger's

---

[53]
      *See, e.g., UBS Int'l. Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, No. 09 Civ. 4286(LAK), 2010 WL 743371, at *3 (S.D.N.Y. Feb. 24, 2010); *Essex Ins. Co. v. Interstate Fire & Safety Equipment Co., Inc.*, 263 F.R.D. 72, 77 (D. Conn. 2009);

[54]
      2 SILBERBERG & SPIRO § 22:12, at 22-29.

[55]
      *FG Hemisphere Assocs.*, 2005 WL 545218, at *5 (emphasis in original).

[56]
      *Silivanch v. Celebrity Cruises, Inc.,* 333 F.3d 355, 366-67 (2d Cir.2003); *Canfield v. Van Atta Buick/GMC Truck, Inc.,* 127 F.3d 248, 250 (2d Cir.1997).

attention on September 1, 2010, when the Individual Petitioners filed a brief in opposition to the motion to quash and argued that the failure to produce a privilege log or demonstrate that it would have been unduly burdensome to have done so warranted rejection of the privilege claims.[57]  Even then, however, no privilege log was forthcoming and no request for an extension was made.

In view of these considerations alone, this Court holds that any claims of privilege with respect to the documents sought by the subpoena were waived.  But the Court reaches the same result on additional grounds, even assuming that there was not a waiver purely on this basis and that other considerations also are pertinent.

The Ninth Circuit, in *Burlington Northern & Santa Fe Railway Co. v. United States District Court,*[58] canvassed some of the appropriate considerations in assessing the failure to submit a timely privilege log in the context of FED. R. CIV. P. 26(b)(5).  It began with the presumption that the privilege log is due with the response to a discovery request.  In the Ninth Circuit's view, relevant also to the issue of waiver are "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged;" "the magnitude of the document production; and other particular circumstances of the litigation . . . ."[59]  "These factors," it added "should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as

---

[57]  DI 37, at 6-7.  *See also* DI 38, at 47 n.23.

[58]  408 F.3d 1142.

[59]  *Id.* at 1149.

well as tactical manipulation of the rules and the discovery process."[60]   So, without necessarily

adopting the *Burlington Northern* view, this Court has performed such an analysis, bearing in mind

the important difference between Rule 26(b)(5) and S.D.N.Y. Civ. R. 26.2(c), viz. that Rule 26.2(c),

unlike Rule 26(b)(5), sets a clear rule by which a privilege log is due in the absence of an extension

granted by the Court.

      First, the motions to quash filed by Donziger and his clients not only failed to include

a detailed privilege log.  They failed to identify the documents withheld, even by categories, and

they did not provide sufficient information to "enable[] the litigant[s] seeking discovery and the

court to evaluate whether each of the withheld documents is privileged."[61]   The motions thus

foreclosed any serious attempt to come to grips with the specific privilege claims in the context of

the motions to quash.

      Second, whether so intended or not, the effect of this approach served the tactical

interests of Donziger and the Lago Agrio plaintiffs and substantially prejudiced the parties seeking

discovery.  The Court already has alluded to the time sensitive nature of this matter.  By failing to

produce the privilege log with the motions to quash, Donziger and his clients precluded resolution

of the merits of the privilege questions on the same timetable as their other objections to the

subpoenas.  Had the privilege log been served when it was required, on the other hand, all or at least

most of the privilege objections could have been resolved on their merits sometime ago.  Thus, by

contravening the policy underlying Rule 26.2(c) and presenting their objections in "staggered

batches," Donziger and his clients have placed the Individual Petitioners  in an impossible or nearly

---

[60]    *Id.*

[61]    *Id.*

impossible position.  It would be difficult and perhaps impossible, starting today, for them to litigate the privilege objections on their merits in this Court, litigate to conclusion any appeals that might be taken from the Court's rulings, and take a deposition of Donziger informed by the contents of any documents as to which privilege claims ultimately were overruled in time for the January 5 hearing in Ecuador.  Thus, the failure to submit the privilege log in August, when it was required, will deprive the Individual Petitioners of the timely benefit of any documents as to which the privilege claims could not be sustained on the merits, and of testimony informed by those documents, simply as a result of the delay attributable to the violation of Rule 26.2(c) – unless this Court adheres to its waiver ruling.[62]

Third, Donziger and the Lago Agrio plaintiffs are actively attempting to secure precisely this unwarranted advantage.  They are pressing forward in Ecuador on all fronts despite repeated requests to cooperate in staying or slowing events in Ecuador to permit for deliberate litigation of the issues here.

Accordingly, even if the failure to comply with Rule 26.2(c) or to seek an extension of time for compliance in the face of the Individual Petitioners pointing out the failure on September 1, were not alone sufficient to find waiver, the Court nevertheless would hold that Donziger and the Lago Agrio plaintiffs waived all privileges and protections that might have been asserted in response to the subpoenas, including those with respect to the 8,652 documents belatedly enumerated in the log, on the basis of all of the considerations referred to above.  It would decline to exercise its discretion to relieve them of that waiver.

---

[62]    Chevron's position also is severely prejudiced in the same way.  Although the Court is not aware of a clear date in the Ecuadorian civil litigation comparable to the January 5 preliminary hearing in the criminal matter, it understands that important steps adverse to its interests could occur at any time.

Finally, even if all of the foregoing were not sufficient to warrant that result, there is an additional ground as well.  This Court is satisfied also that the tactical advantage that Donziger and the Lago Agrio plaintiffs have gained and the disadvantage to which they have put their adversaries was not simply a consequence of errors made and positions taken for benign reasons. The Court finds and concludes that they have intended, at least since September 1, to achieve that tactical advantage at their adversaries' expense[63] based, among other things, on the following:

- The eleventh-hour attempt by the GOE to intervene – after the Court ruled that Donziger and his clients were obliged to produce the documents and the Court of Appeals had denied a stay pending appeal to assert a supposed common interest in the Lago Agrio plaintiffs' privilege – supports that view.  The GOE has been working closely with Donziger for years and stands to gain billions for Ecuador if the Lago Agrio plaintiffs prevail against Chevron.  Its belated attempt to get into this case has all the hallmarks of an attempt to pull Donziger's chestnuts out of the fire.

- Some of the assertions of privilege in the 8,652-item privilege log – including over 2,500 items being documents sent or disclosed to a public relations person, the founder of the Amazon Defense Front or La Frente, Amazon Watch, and a host of newspapers and magazines – further suggest that Donziger and the Lago Agrio plaintiffs are not operating in entire good faith, although the Court does not now rule

---

[63] The Court does not so find as to Donziger's counsel, who entered this matter only recently.

on the merits of those privilege claims.[64]

- The attempt to gain the benefit of withdrawing Donziger's motion for reconsideration of the waiver holding in an attempt to convince the Court of Appeals that the order appealed from is "final" while then asking this Court in substance to grant the "withdrawn" motion is yet another example of attempting to gain tactical advantage by procedural maneuvering.

- The inconsistency between what the Lago Agrio plaintiffs told the Court of Appeals about the effect of the Summary Order and their present arguments here reinforce that impression.

- Moreover, as noted above, the repeated refusal of Donziger and his clients to stay the Ecuadorian civil litigation and – now joined by the GOE – to seek a stay of the criminal prosecution make their

---

[64]

Their position with respect to the communications with the media and a public relations person are especially troublesome.

It is difficult to see how correspondence with the *Wall Street Journal* and the like could be a confidential communication between attorney and client for the purpose of rendering or receiving legal advice.

Likewise, while this Court has extended the principle of *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961) (client's communications with accountant employed by his attorney privileged where made to enable attorney to understand the client's situation in order to provide legal advice), to cover "(1) confidential communications (2) between lawyers and public relations consultants (3) hired by the lawyers to assist them in dealing with the media in cases such as this [*i.e.,* high profile grand jury investigation] (4) that are made for the purpose of giving or receiving advice (5) directed at handling the client's legal problems," *In re Grand Jury Subpoenas,* 265 F. Supp.2d 321, 330-31 (S.D.N.Y. 2003), neither Donziger nor the Lago Agrio plaintiffs have offered any reason to suggest that Donziger's communications with the public relations person at issue here fall within this very narrow holding.

objectives clear.  If they truly eschewed any desire to gain a tactical advantage by delaying production of their privilege log, the right course of action would be to offer a stay in Ecuador in exchange for belated consideration of their privilege objections.  The fact that they refuse that simple exchange speaks volumes.

In the last analysis, resolution of "reciprocal claims of gamesmanship advanced by [all] parties [in this situation] . . . is precisely the type of evaluation that is entrusted to the district court."[65]  This Court finds that the failure to submit a privilege log, at least from September 1, 2010, when the Individual Petitioners made an issue of it in their papers in opposition to the motions to quash and possibly earlier, was a deliberate attempt to structure the response to the subpoenas in a way that would create the maximum possibility for delay.  The circumstances warrant the conclusion that the goal was to force the Individual Petitioners to proceed to trial in the Ecuadorian criminal case and to obtain a judgment against Chevron before any of them could get any or, at least, the most important documents responsive to the subpoenas.

To be sure, the Court accepts that preparation of the privilege log took a good deal of effort.  It does not doubt that Donziger understandably wished to avoid doing it if he could defeat the subpoenas without it.  But the proper course would have been to apply to the Court for relief under Rule 26.2(c).  That would have given Chevron and the Individual Petitioners an opportunity to resist.  Instead, Donziger and the Lago Agrio plaintiffs took their chances that the Court would not hold that their failure to provide the privilege log waived any privileges.   In all the circumstances, that is a bet that they should lose, regardless of whether there is any *per se* rule of

---

[65] *Burlington Northern,* 408 F.3d at 1150.

waiver.

Accordingly, having accepted Donziger's invitation to reconsider the waiver holding, this Court again holds – on the law, on the facts, and in the exercise of discretion – that each and every privilege claim with respect to the documents sought by the subpoenas has been waived.  It declines to exercise its discretion in their favor.  Moreover, it would reach exactly the same result even without regard to its finding that the failure to file a timely privilege log was intended to achieve the untoward objectives alluded to above.  The nature of the failure coupled with its objective effects are sufficient for this purpose without regard to the intent.

D.      *The Motion to Intervene*

The Republic of Ecuador seeks to intervene as of right or, alternatively, by leave of court in order to assert a claim of privilege in some of the documents in Donziger's possession.

FED. R. CIV. P. 24, which governs intervention, provides in pertinent part as follows:

"(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

*     *     *

"(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

"(b) Permissive Intervention.

"(1) In General. On timely motion, the court may permit anyone to intervene who:

*     *     *

"(B) has a claim or defense that shares with the main action a common question of law or fact.

*   *   *

> "(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

> "(c) Notice and Pleading Required. *   *   * The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."

Whether intervention is sought as of right or by permission, the application must be timely.[66]  "Factors to consider in determining timeliness include: '(a) the length of time the applicant knew or should have known of [its] interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to [the] applicant if the motion is denied; and (d) [the] presence of unusual circumstances militating for or against a finding of timeliness.'"[67]  On balance, these factors cut heavily against the Republic of Ecuador.

First, the Republic has been well aware of its interest for months before making the motion.  It received copies of the subpoenas – which quite explicitly called for production of all documents containing or referring to the GOE – at or about the time they were served on Donziger in early August 2010.[68]  While its counsel claims to have assumed that Donziger would take appropriate steps to protect the allegedly shared privilege, he admits that he read Donziger's motion to quash within a week or so after it was filed, which was on August 27, 2010, and then learned that

---

[66]

  *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 389 (2d Cir. 2006) (intervention as of right); FED. R. CIV. P.24(a) (same),  24(b)(3) (permissive intervention).

[67]

  *Id.* at 390 (quoting *United States v. New York,* 820 F.2d 554, 557 (2d Cir.1987)).

[68]

  *See* Tr. at 45:10-17.

Donziger had not submitted a privilege log.[69]  Within a week or so after September 1, 2010, he learned also that the Individual Petitioners had made an issue of the failure to submit the privilege log.[70]  The Republic  then elected to take no steps to protect its interests "until the motion to compel came in"[71] – that is, until (1) after the Court issued the Summary Order directing Donziger to produce the documents "forthwith," (2) after the Court of Appeals denied a stay pending appeal on November 15, and (3) after Chevron and the Individual Petitioners had moved to compel Donziger to do what he had been obligated to do since October 20 (save for the period of the temporary stay) – produce the documents, including those as to which the Republic claims an interest.  In short, the Republic was fully aware of the litigation over the allegedly privileged documents and fully aware of Donziger's alleged waiver by failure to produce a privilege log, but did nothing until after the issue was decided at the district court level and a stay pending appeal denied.  The length of time that the Republic knowingly allowed to lapse without seeking to assert its rights, in all the circumstances, manifestly was unreasonable.  This is especially evident from the fact that the Republic intervened in the District of Columbia to oppose other applications by Chevron and the Individual Petitioners  to issue Sections 1782 subpoena to another attorney – and it did so within fourteen days after the cases were commenced, filing and serving its papers the next day.[72]

Second, permitting the Republic to intervene at this late date – after Donziger and

---

[69]
      Tr. 56:2-21.

[70]
      *Id.* 56:22-57:10.

[71]
      *Id.* 57:11-22.

[72]
      Docket items 11 and 12, *In re Application of Veiga,* Nos. 10-370 (CKK), 10-371 (CKK) (D. D.C. filed June 8, 2010).

the Lago Agrio plaintiffs have litigated and lost the case at this level – would be highly prejudicial to the Individual Petitioners and Chevron.  They now could be forced to litigate the merits of the GOE's claims of privilege, albeit with respect to only a modest subset of the documents as to which Donziger and his clients claim privilege.  That would take time and further delay their obtaining the materials in a circumstance in which time is of the essence.

Finally, the unusual circumstances of this case further support a finding of untimeliness.  If the Republic were sufficiently interested in litigating the merits of its privilege claims now, it certainly could undertake to use its best efforts to delay the criminal prosecution and the civil case in Ecuador.  Despite this Court's inquiry, it has offered only excuses for why that could be difficult to do.  It should not be permitted to have it both ways – to obtain the Court's indulgence for its belated attempt to enter this case while insisting that it will not even attempt to alleviate time pressures on its adversaries that it might well be able to alleviate.

To be sure, there is some risk of prejudice to the Republic in that its belated attempt to intervene may result in the disclosure of a limited number of documents as to which it asserts some claim of privilege without an adjudication of that claim on the merits.  But that risk is far outweighed by the factors described above, particularly given the fact that the Republic knowingly sat on its hands from late August until the middle of November.  Nor may the GOE take refuge in the principle that one joint holder of a privilege may not waive the privilege of another.  Here, the GOE knew that the subpoenas sought documents as to which it claimed a joint privilege by approximately September 1.  It stood by while Donziger and the Lago Agrio Plaintiffs lost their challenge to the subpoenas and did nothing even after the Court ordered production until after the

Court of Appeals denied a stay pending appeal.[73]  Indeed, the Republic has admitted that it has not even looked at the documents in question,[74] copies of many of which are in the files of its attorneys in this case.[75]

The proposed intervention is untimely.

## Conclusion

For the foregoing reasons,

(1)    The motion for reconsideration of the waiver ruling in the Summary Order, which was withdraw in form but not in substance, is granted.  On reconsideration, the Court adheres to its prior ruling.

(2)    The motions of Chevron and the Individual Petitioners [DI 105, 110] are

---

[73]

Among the telling exchanges on this point at oral argument was this one:  "THE COURT: You could have come in and said, Judge, we claim a common interest privilege here.  And Danziger's [sic] failure to submit a log shouldn't be deemed to waive whatever privilege we have, and that could have been litigated starting in September, not 2 days before Thanksgiving, right?  MR. MacNEIL MITCHELL [Counsel to the GOE]:  I guess so.  THE COURT:  And with this hearing in Ecuador on January the 5th, we would have been 4 months away from that hearing, affording time for some litigation of the issue, not the Christmas and Thanksgiving holidays away from it, right?  MR. MacNEIL MITCHELL: Correct."  Tr. 57:18-58:3.

[74]

*Id.* 58:6-21 ("MR. MacNEIL MITCHELL:  Because what I think -- because, first of all, the documents that I believe we're talking about, our common interest documents are a -- should be a relatively small subset of the total group of documents covered by the subpoena.  So-- THE COURT:  Do you know?  MR. MacNEIL MITCHELL:  I don't know.  THE COURT: Did you look at Danziger's [sic] privilege log?  MR. MacNEIL MITCHELL:  Did look at his privilege log.  THE COURT:  You can't tell me whether I'm dealing with 30 documents or 4,000, right, as to which you claim a privilege.  MR. MacNEIL MITCHELL:  I think it was more -- from the log -- and I have not gone through and examined everything in -- in the log. But I thought it was something more like a couple of hundred.")

[75]

*Id.* 60:17-61:9 (indicating that the documents as to which Ecuador asserts a joint privilege are correspondence between Donziger and Winston & Strawn).

32

granted.  Donziger shall produce each and every document responsive to the subpoenas (irrespective of whether any privilege or other protection against disclosure has been or hereafter is or may be claimed) forthwith.

        (3)     The motion of The Republic of Ecuador to intervene is denied.

This Court will make itself available promptly to hear any application for a stay, whether pending appeal or otherwise, but the obligation to comply with this and prior orders remains in effect unless and until this or a higher court otherwise orders.

The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

Dated:           November 29, 2010
Corrected:     November 30, 2010

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)