UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of

CHEVRON CORPORATION, et al.,

Petitioners.

This documents applies to: ALL CASES

10 MC 00002 (LAK)

**SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO CHEVRON'S MOTION TO DISQUALIFY EMERY**

LANKLER SIFFERT & WOHL LLP
Frank H. Wohl
500 Fifth Ave., 33rd Floor
New York, NY 10110

*Attorneys for Emery Celli Brinckerhoff & Abady LLP*

EMERY CELLI BRINCKERHOFF & ABADY LLP
Jonathan S. Abady
Ilann M. Maazel
75 Rockefeller Plaza, 20th Floor
New York, NY 10019

*Attorneys for Ecuadorian Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

DISCUSSION .......... 1

I. The Court Should Not Disqualify Emery .......... 1

a. Emery Has Authority to Represent At Least 41 Plaintiffs .......... 1

b. Emery Has Authority to Represent 46 Plaintiffs .......... 3

II. Chevron Has No Basis for Sanctions Based on Emery's Representation of Plaintiffs .......... 5

III. Chevron Has Presented No Basis for Sanctions Based on Emery's Representations in Section 1782 Proceedings .......... 8

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

Page(s)

CASES

60 East 80th Street Equities, Inc., 218 F.3d 109 (2d Cir. 2000) ..... 8

Application of Sarrio, S.A., 119 F.3d 143 (2d Cir. 1997) ..... 6

Banus v. Citigroup Global Mkts, Inc., No. 09 Civ. 7128 (LAK), 2010 WL 5158642 (S.D.N.Y. Dec. 20, 2010) ..... 8

Bush v. Teachers Ins. and Annuity Assoc. of Am., No. 05 Civ. 0378 (VPM), 2006 WL 1882761 (M.D. Ala. July 7, 2006) ..... 4

Diversified Grp Inc. v. Daugerdas, 139 F. Supp. 2d 445 (S.D.N.Y. 2001) ..... 5

Foster v. City of New York, No. 96 Civ. 9271 (PKL), 2000 WL 145927 (S.D.N.Y. Feb. 7, 2000) ..... 3

Kiobel v. Millson, 592 F.3d 78 (2d Cir. 2010) ..... 8

Office & Prof'l Emps. Int'l Union, Local 95 v. Wood Cnty. Tel. Co., 408 F.3d 314 (7th Cir. 2005) ..... 2

Pannonia Farms, Inc. v. United States of Am. Cable, 426 F.3d 650 (2d Cir. 2005) ..... 8

Park v. Seoul Broad. Sys. Co., No. 05 Civ. 8956 (BSG), 2008 WL 619034 (S.D.N.Y. Mar. 6, 2008) ..... 5

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) ..... 7

Pope v. Rice, No. 04 Civ. 4171 (DLC), 2005 WL 613085 (S.D.N.Y. Mar. 14, 2005) ..... 3

Schwartz v. Millon Air, Inc., 341 F.3d 1220 (11th Cir. 2003) ..... 4, 6

Shafii v. British Airways, PLC, 83 F.3d 566 (2d Cir. 1996) ..... 8

United States v. Stein, 435 F. Supp. 2d 330 (S.D.N.Y. 2006) ..... 9

Wolters Kluwer Finan. Servs. v. Scivantage,
564 F.3d 110 (2d Cir. 2009) ........ 6

**STATUTES**

28 U.S.C. § 1927 ........ 8

**OTHER AUTHORITIES**

Restatement (Third) of Agency § 4.01 (2006) ........ 2, 3

Federal Rule of Civil Procedure 11 ........ 8

## PRELIMINARY STATEMENT

Emery Celli Brinckerhoff & Abady LLP ("Emery") has the authority to represent 46 plaintiffs; copious documentary proof establishes that fact. Despite Chevron's insinuations in its Memorandum of Law in Support of its Application to Show Cause ("Chevron Initial Memorandum"), Chevron neither claims that any of the documentary bases for Emery's authority are inauthentic, nor that the substance of these documents leaves Emery without a client in the case at hand.

Rather, Chevron now argues, in its Second Reply Memorandum of Law in Support of its Application to Show Cause ("Chevron Second Reply Memorandum"), that the documents confer authority on Emery for fewer than all of the plaintiffs. Even if the Court credited Chevron's revised position, which it should not, Emery would nevertheless have authority to represent almost all of the plaintiffs in this case.

In an attempt to salvage its motion, Chevron elevates a seeming afterthought relegated to a footnote in its Initial Memorandum to a major point in its Second Reply Memorandum, allegations of wrongdoing by Emery in this § 1782 proceeding. While these allegations seem to arise in part from information previously unknown to the Emery firm adduced in the ongoing Donziger deposition, which Emery is in the process of evaluating, there is not support for Chevron's disqualification motion.

## DISCUSSION

### I. The Court Should Not Disqualify Emery

#### a. Emery Has Authority to Represent At Least 41 Plaintiffs

Chevron's Initial Memorandum was premised largely on arguments that Emery had no signed engagement letters and that the retention of Alberto Wray, who is not the attorney who

engaged Emery, included some forged signatures. After Emery provided signed engagement letters and pointed out that its authority results primarily from retention through Pablo Fajardo, and not Wray, Chevron shifted its argument. Chevron's Second Reply now asserts that Fajardo's 2006 retainer which he represented was signed by 46 plaintiffs – the authenticity and validity of which Chevron does not contest – does not authorize Fajardo to retain U.S. counsel. Even accepting Chevron's argument, Chevron does not contest that the 2010 ratification confers ongoing authority for 41 of the plaintiffs. (Emery ex. 6). The ratification is therefore fatal to Chevron's attack on Emery's authority to represent 41 plaintiffs going forward.

Failing to challenge the validity of the ratification on a going-forward basis, Chevron instead argues that the plaintiffs' 2010 ratification does not support Emery's authorization to represent all plaintiffs before the date of the ratification. Chevron simply misconstrues the nature of the ratification. Ratification often serves the function of affirming or clarifying a prior act of authority. E.g., Office & Prof'l Emps. Int'l Union, Local 95 v. Wood Cnty. Tel. Co., 408 F.3d 314, 318 (7th Cir. 2005) ("Whatever ambiguity may lurk in the Union's May 1, 2003[] letter has been dispelled by ratification of the agreement's continuation."); see Restatement (Third) of Agency § 4.01 (2006).

Chevron's claim that the language of the ratification "[a]cknowledge[es] the lack of any prior authority" (Chevron Second Reply Memorandum at 5) is defeated by the plain text of the document. The ratification states that "[t]he designated legal proxy can delegate this power fully or partially to other persons." (Emery ex. 6 at 5). This language empowers Fajardo to designate foreign attorneys to represent the plaintiffs in the U.S. Further, it states that the plaintiffs "ratify and approve" all of Fajardo's prior actions. Chevron has simply offered no basis for attacking this document.

Finally, Chevron argues that the ratification cannot serve as validation of prior conduct because Emery has not proven that the plaintiffs knew of the material facts related to the subject of the ratification. This argument is unavailing. The ratification is merely a clarification of Fajardo's authority in 2006. See Restatement (Third) of Agency § 4.01 (2006) (addressing ratification as a tool to clarify an ambiguous grant of authority). The material knowledge requirement has no place where, as here, ratification is used only to clarify that authority already existed in 2006. Further, Chevron has offered no basis to believe that the plaintiffs were under any misapprehension regarding the authority they were granting Fajardo in either 2006 or 2010.

Although Emery maintains, as explained in detail below, that it is authorized to represent 46 Lago Agrio plaintiffs based on Fajardo's 2006 retention agreement (Emery ex. 3), its clear authorization to represent the 41 plaintiffs who signed the ratification defeats Chevron's motion for disqualification. If the Court is unsatisfied with the documentation of Emery's authorization to represent the remaining plaintiffs, the Court should grant Emery the time necessary to obtain additional documentation from the remaining plaintiffs.

**b. Emery Has Authority to Represent 46 Plaintiffs**

Chevron's argument appears to be based on the mistaken premise that New York law requires Fajardo to have a written authorization signed by plaintiffs specifically authorizing Fajardo to retain other counsel. But New York law requires an attorney to have authorization (actual or apparent authority) to engage co-counsel on behalf of a client, Pope v. Rice, No. 04 Civ. 4171 (DLC), 2005 WL 613085, at *6 (S.D.N.Y. Mar. 14, 2005) (Cote, J.), which "may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act," Foster v. City of New York, No. 96 Civ. 9271 (PKL), 2000 WL 145927, at *3 (S.D.N.Y. Feb. 7, 2000) (Leisure, J.). That is the case here.

The record establishes that Fajardo engaged Emery based on his ample authority to engage U.S. counsel under New York law. The record is replete with statements by Fajardo (Emery exs. 1, 2, 4), including an affidavit to this Court (Declaration of Pablo Fajardo Mendoza ("Fajardo Decl.") ¶¶ 3-5), that the plaintiffs conferred upon him through their words and actions authority to engage U.S. counsel. (E.g., Fajardo Decl. ¶ 3, 5 ("In 2006, the Ecuadorian Plaintiffs gave me the power to represent them in the *Lago Agrio* Litigation by signing documents appointing me *el procurador común* (the "Common Attorney") . . . . As the Common Attorney, I am authorized under Ecuadorian law to retain other law firms including: Emery Celli."))

Chevron's assertion that there is a requirement to personally meet all of the plaintiffs is incorrect. As the Eleventh Circuit stated:

> We particularly do not want to create this rule: an American lawyer cannot represent a client who resides in a distant country unless the lawyer and the client – before the suit is filed or early in the litigation – meet face-to-face, even when the client is not an English speaker and even if a face-to-face meeting would involve a go-between, such as an interpreter. Such a rule would be a substantial bar to foreign nationals being able to litigate claims in American courts that the law says American courts have the authority to hear.

Schwartz v. Millon Air, Inc., 341 F.3d 1220, 1126 (11th Cir. 2003).

Ecuadorian law leads to the same result.[1] Here, Fajardo, an Ecuadorian lawyer, has affirmed that under Ecuadorian law he has authority to retain foreign attorneys to aid in

---

[1] Ecuador has the greatest interest in applying its law here. As noted in our previous brief, New York choice of law principles look to the state with the most significant relationship with the particular issue in conflict. The issue before the Court is whether Fajardo has authority as the plaintiffs' agent to engage co-counsel. Here, the entire agency relationship – the principal (the plaintiffs), the agent (Fajardo), and the agency agreement – exists in Ecuador. New York only has the subagent and the forum. These contacts are not enough to impose New York law over questions related to the validity of Fajardo's authority as the plaintiffs' agent. E.g., Bush v. Teachers Ins. and Annuity Assoc. of Am., No. 05 Civ. 0378 (VPM), 2006 WL 1882761, at *3 n.5 (M.D. Ala. July 7, 2006) (Alabama court applying Georgia law in deciding whether an agent had authority to perform an action, because Georgia was the place where the principal and agent resided when the principal executed the power of attorney. Alabama court applied non-forum law despite the fact that the transaction at issue was executed and the case was tried in Alabama). If New York's contacts were found to be sufficient then every time a principal wishes to appoint an out-of-jurisdiction subagent he will have to reconsider the structure of agency relationship to ensure that it conforms to out-of-jurisdiction requirements. Simply stated, such a rule would be unreasonably burdensome on principals.

prosecution of the Lago case. (Emery ex. 4; Fajardo Decl. ¶¶ 3-5). Chevron has presented no evidence of Ecuadorian law to the contrary.

## II. Chevron Has No Basis for Sanctions Based on Emery's Representation of Plaintiffs

Chevron's claim that Emery should be sanctioned based on a theory that Emery knew that it had no authority to represent the plaintiffs is frivolous. Significantly, Chevron advances its claim for such extreme relief without advancing a single authority that a court has ever subjected counsel's belief that it has authority to represent a client to the searching inquiry that Chevron advances here. Indeed, Chevron's argument collides directly with well settled authority that counsel may appropriately advance positions that have legal support in existing law or that may represent a possible extension of existing law. Park v. Seoul Broad. Sys. Co., No. 05 Civ. 8956 (BSG), 2008 WL 619034, at *1 (S.D.N.Y. Mar. 6, 2008) (Jones, J.) ("A party violates Rule 11 where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." (quotation and alteration omitted)).

In order to impose sanctions under a court's inherent powers, it must find that there is "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by

---

The relative interests of Ecuador and New York support application of Ecuadorian law. The record indicates that pursuant to Ecuadorian law Fajardo has authority to engage foreign co-counsel to aid in the prosecution of the plaintiffs' case. (Emery ex. 4) This policy protects the principal's (the plaintiffs') ability to authorize his agent (Fajardo) to engage a subagent (U.S. counsel). Even if Chevron were correct and New York law was to prohibit Fajardo from appointing co-counsel in New York – a conclusion that we dispute – New York would have no interest in applying that rule to the Ecuadorian plaintiffs, because the policy behind that rule is aimed at protecting New York principals.

It is noteworthy that in Diversified Group Inc. v. Daugerdas, cited by Chevron, the New York court applied Illinois law because Illinois had the greater interest in regulating the attorney-client relationship. See 139 F. Supp. 2d 445, 452-53 (S.D.N.Y. 2001) (Sheindlin, J.). Here the relevant attorney-client relationship is between the plaintiffs and Fajardo – a relationship that Ecuador plainly has a paramount interest in regulating.

improper purposes." Wolters Kluwer Finan. Servs. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009). Chevron fails both of these tests.

First, Emery's assertion of representation was not "entirely without color." By requiring plaintiffs' lead counsel to (1) affirm his authority to retain Emery in the agreement itself; (2) provide the signatures of 46 plaintiffs to verify Fajardo's role as their counsel; and (3) provide an express writing affirming his power to hire other firms to represent plaintiffs, *all* of which was done before Emery filed a single pleading on plaintiffs' behalf, Emery exercised due diligence and obtained more than good faith to believe that it was authorized to proceed. As the Eleventh Circuit has held, it is particularly reasonable to rely on the representations and documents provided by foreign co-counsel in international litigation over "great distance across international borders," and involving "foreign languages and cultures." Schwartz, 341 F.3d at 1226. The proof offered by Fajardo to Emery was sufficient as a matter of law; requiring in-person verification of foreign co-counsel's representations would "create a substantial bar to foreign nationals being able to litigate claims in American courts that the law says American courts have the authority to hear." Id.

Chevron has also failed to establish that Emery asserted the plaintiffs' right to have Emery as their attorney for an improper purpose. Emery's purpose in this litigation is to oppose a § 1782 application against one of the plaintiffs' attorneys. As the Second Circuit has held, foreign litigants have standing, and therefore a valid and legitimate interest in opposing such proceedings. Application of Sarrio, S.A., 119 F.3d 143, 148 (2d Cir. 1997) ("[T]he ultimate targets of a § 1782 discovery order issued to third parties have standing to challenge the district court's power to issue a subpoena under the terms of an authorizing statute.").

Chevron's assertions that Emery partner Richard Emery knew that Fajardo did not have authority to engage the Emery firm is disproved by the email string on which Chevron relies. A careful reading of the emails reveals that Emery's concerns related to payment, not authorization.[2]  Similarly, Chevron claims that a January 8, 2010 email by Jonathan Abady asking for confirmation that Fajardo and Luis Yanza had authorization to engage Emery on behalf of the plaintiffs (Chevron ex. 71) undermines Emery's good faith. To the contrary, the email seeks to confirm that Emery's retention was valid before it went into court and made representations about its authority. This is exactly the type of diligence the Court should credit when reviewing Emery's conduct.

Finally, Chevron asks this Court to require the plaintiffs to produce Fajardo from Ecuador. Chevron has established no basis for such an order, nor has it established that Emery has the ability, or this court has jurisdiction, to summon Fajardo from Ecuador. Chevron has, however, announced that it has filed a motion to nullify the litigation in Ecuador. (Chevron Initial Memorandum at 16). If Chevron claims that Fajardo lacks authority to represent plaintiffs, that issue is best litigated in Ecuador. Cf. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 260-61 (1981).

---

[2] On October 13, 2010 at 3:46 pm, Mr. Emery wrote an email to Donziger stating that the Emery firm wanted "to get started on the 1782s and all other fronts," but that they couldn't "do that until you pay us for August and September and for October under the retainer." (Chevron ex. 67 at 2)  Donziger responded at 5:01 pm by stating, inter alia, that "we cannot pay you until we get the funding." In that same email he also stated that "[w]e cannot have each individual plaintiff sign the agreement at this point." (Chevron ex. 67 at 1-2)  At 5:18 pm, William Carmody then sent Mr. Emery copies of a revised draft engagement agreement. At 9:51 pm, Mr. Emery responded in an email that is quoted in Chevron's brief: "This is not what we agreed to and is totally unacceptable. I am becoming extremely weary of this negotiation and will not allow it to continue much further." (Chevron ex. 67 at 1)  It is plain from Mr. Emery's 3:46 pm email that his concern was the payment, not the signatures of the plaintiffs. Nowhere in the email chain did Mr. Emery refer to the plaintiffs individually signing the retainer. Chevron's argument to the contrary is frivolous and misleading.

## III. Chevron Has Presented No Basis for Sanctions Based on Emery's Representations in Section 1782 Proceedings

Chevron's attacks on Emery's representations to this Court are unfounded. Chevron lamely asserts that Emery "suggested that plaintiffs submitted materials to Cabrera only pursuant to the order of the Lago Agrio court," (Chevron Second Reply Memorandum at 8 (emphasis added) (citing Dkt. 28)).

Disputed suggestions are not the stuff of sanctions. "A statement of fact can give rise to the imposition of sanctions only when the particular allegation is utterly lacking in support." Kiobel v. Millson, 592 F.3d 78, 81 (2d Cir. 2010) (internal quotation omitted). The rule is a clear application of the Second Circuit's focus on not "rein[ing] in zealous advocacy" in applying Rule 11. See Pannonia Farms, Inc. v. United States of Am. Cable, 426 F.3d 650, 652 (2d Cir. 2005).[3]

Chevron falls short of this standard. Chevron does not assert the falsity of any "statement of fact," much less a statement "utterly lacking" in factual support. Regardless of whether Chevron agrees with Emery's alleged "suggestions," it falls well short of the basic requirements for a sanctions motion. See Shafii v. British Airways, PLC, 83 F.3d 566, 570-71 (2d Cir. 1996) (holding that simply because an argument is not successful does not render it sanctionable).

Rather than challenge the truth of Emery's statements, Chevron levies attacks that are "economical with the truth," United States v. Stein, 435 F. Supp. 2d 330, 381 (S.D.N.Y. 2006) (Kaplan, J.), by offering out-of-context quotations from Emery lawyers. Mr. Maazel's

[3] The standard for sanctions under 28 U.S.C. § 1927 is even more stringent. "An attorney violates Section 1927 by 'unreasonably' and 'vexatiously' multiplying legal proceedings." Banus v. Citigroup Global Mkts, Inc., No. 09 Civ. 7128 (LAK), 2010 WL 5158642, at *4 (S.D.N.Y. Dec. 20, 2010) (Kaplan, J.) (citing statute). It "applies only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Id. (citing 60 East 80th Street Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000)). For the reasons discussed above, Chevron's allegations do not satisfy this standard.

"misleading at best" email (Chevron Second Reply Memorandum at 8) is a good example. Emery's co-counsel sent a draft of the Fajardo declaration to Emery that included a reference to a February 2008 submission plaintiffs made to Cabrera that did not contain material from plaintiffs' consultant Stratus, but that did not refer to a March 2008 submission plaintiffs made to Cabrera that did include Stratus work product. (See Abady Decl. Ex. 8). In response, Mr. Maazel wrote: "Pablo mentions one document submission [the February 2008 submissions] but not the other [the March 2008 submission]. If he's submitting an affidavit about what happened, why omit the most important part? It seems misleading at best." (See Abady Decl. Ex. 9). Later in the email chain, Mr. Maazel wrote again: "If, as Andrew notes, Pablo [Fajardo] only states the general practice of ex parte submissions, as opposed to referring to one submission he made but not the other, that makes more sense to me. I don't want this court, some day in the future, wihether [sic] rightly or not, ever to feel it was misled by us." Id. In response, the plaintiffs' team removed the questioned statements, satisfying Mr. Maazel's concern. (Dkt. 31-6).

Similarly, Chevron cites an email in which Andrew Wilson states that Stratus's David "Chapman did an excellent job of not remembering anything in his deposition." (Chevron Second Reply Memorandum at 8). Read in its entirety, the email makes plain that Mr. Wilson did not have a "complete picture of what happened" with Stratus and Cabrera, but was concerned that Chevron's attorneys were attempting to "make this about the lawyers." (Chevron ex. 4 at 1). In any event, Chevron makes no claim that Mr. Chapman's stated lack of recall was untrue, or that Mr. Wilson (or anyone else at Emery) encouraged Mr. Chapman (who was represented by other counsel) to give inaccurate testimony, nor even that that Mr. Wilson communicated with Mr. Chapman before his deposition.

Finally, Chevron states that Mr. Maazel expressed, in Chevron's words, "alarm," that the

Stratus/Cabrera relationship would be revealed in Colorado. Of course, what the email actually does is urge disclosure, by plaintiffs, in Ecuador (Mastro Ex. 3 ("We need to make our submission in Ecuador and fast. . . . Where are we in terms of drafting the Ecuadorian submission?")) hardly action consistent with an attempt to hide wrongdoing.

Chevron finally refers to an email from an Ecuadorian lawyer, Julio Prieto, to Donziger appearing to claim that, if the plaintiffs' contacts with Cabrera came to light in the Colorado §1782 proceeding, the case would be destroyed and Ecuadorian lawyers "might" be jailed. Donziger admitted that the email was not shared with Emery, though he testified that at some point he "believed" he told one of the attorneys at Emery of Prieto's concerns. As noted, the ongoing Donziger deposition, now over a dozen days long, has raised a number of factual issues which Emery is reviewing and evaluating. However, notably absent from Chevron's tale of innuendo is any claim that Mr. Prieto's concern was in fact well founded, or even that Donziger communicated to anyone at Emery his belief that Mr. Prieto's concern was well founded. The Prieto email does not support a claim for sanctions against Emery.

## CONCLUSION

For the foregoing reasons, Chevron's motion to disqualify Emery should be denied.

Dated: New York, New York
February 1, 2011

LANKLER SIFFERT & WOHL LLP

/s Frank H. Wohl
Frank H. Wohl
500 Fifth Ave., 33rd Floor
New York, NY 10110
(212) 921-8399

*Attorneys for Emery Celli Brinckerhoff & Abady LLP*

EMERY CELLI BRINCKERHOFF & ABADY LLP

Jonathan S. Abady
Ilann M. Maazel
75 Rockefeller Plaza, 20th Floor
New York, NY10019
(212) 763-5000

*Attorneys for Ecuadorian Plaintiffs*